**In re Charles Douglas WARFEL, Debtor.**

**Charles Douglas Warfel, Appellant,**

**v.**

**City of Saratoga, Appellee.**

**BAP No. NC–00–1195–MAPK.**
**Bankruptcy No. 99–5–5917–MM.**
**Adversary No. 99–5352–MM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 17, 2001.

Filed Aug. 15, 2001.

**3.** Naturally, if the Kansas judgment is improper for some other reason, that is an issue for the Kansas Court of Appeals.

Charles Douglas Warfel (on briefs), Saratoga, CA, appellant pro se.

Ralph P. Guenther, Duffy & Guenther, Monterey, CA, for City of Saratoga.

Before: MARLAR, PERRIS, and KLEIN, Bankruptcy Judges.

### *OPINION*

MARLAR, Bankruptcy Judge:

### *INTRODUCTION*

Charles Douglas Warfel ("debtor") has appealed the bankruptcy court's dismissal of his complaint to determine that a civil judgment for restitution was dischargeable

in his chapter 7[1] bankruptcy case. The civil restitution judgment was owed to the City of Saratoga ("City") and was originally imposed as a condition of the debtor's probation in a criminal proceeding. We conclude that the civil restitution judgment was nondischargeable under § 523(a)(7), and affirm the dismissal of the debtor's complaint.

### FACTS

In April 1994, the City responded to a chemical fire at the debtor's residence. On March 8, 1995, the debtor pled no contest to two misdemeanor violations of the City Code for unsafe storage of hazardous materials without a permit. He was sentenced to three years' formal probation. As conditions to the probation, he was ordered to complete 100 hours of uncompensated community service, and to pay restitution to the City for the toxic clean-up, in the amount of $6,953.59.

In 1997, after failing to complete any of the community service hours or to pay the restitution, the debtor's probation was modified to one year in jail. When the debtor's probation expired on March 8, 1998, the Santa Clara County Superior Court ordered the debtor to complete the balance of the jail time, and, according to California law, ordered a civil judgment for the unpaid restitution. The restitution judgment was entered on April 14, 1999, in the amount of $6,856.73 plus 10% interest from March 8, 1995.

The debtor filed a voluntary chapter 7 petition on September 9, 1999. He listed the City as an unsecured creditor. On September 13, 1999, the debtor filed an adversary complaint to determine whether the restitution was dischargeable. The debtor alleged that he had been unemployed for three years and could not satisfy the judgment and still maintain a minimal standard of living.

■ The City moved to dismiss the complaint. It attached the declaration of its attorney, Benjamin Fay, and a request for judicial notice of the Probation Order, the Superior Court Order After Remittitur, and the Civil Judgment on Order of Restitution.[2] The debtor opposed the motion.[3] Following a hearing, the bankruptcy court entered its order dismissing the complaint, and the debtor timely appealed.

### ISSUE

■ The only substantive issue is whether, upon the expiration of the debtor's probation, a civil judgment that enforces the payment of restitution, imposed as a condition of such probation, is nondischargeable under § 523(a)(7).[4]

---

1. Unless otherwise indicated, references to "chapter" and "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and rule references are to the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.")

2. The bankruptcy court considered the documents subject to judicial notice, but did not indicate that it relied on any other pleadings, such as the Fay affidavit, outside of the complaint. Therefore, the motion was properly treated as one under Fed.R.Civ.P. 12(b)(6), rather than as a summary judgment motion under Fed.R.Civ.P. 56(c). *See MGIC Indem.*

*Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986) (under Rule 12(b)(6), the court may take judicial notice of matters of public record outside of the pleadings).

3. The debtor incorporated into his opposition his First Amended Motion to Strike and Motion for Protective Order, which he filed in bankruptcy court on February 14, 2000. The bankruptcy court orally denied these motions at the hearing. The debtor has not raised issues concerning these motions in this appeal.

4. In his opening brief, the debtor raised another issue concerning alleged violations of

### STANDARD OF REVIEW

 This appeal presents a mixed question of law and fact, which we review *de novo. In re Bammer,* 131 F.3d 788, 792 (9th Cir.1997). "A mixed question of law and fact occurs when the historical facts are established; the rule of law is undisputed, *i.e.,* [the elements of § 523(a)(7) ]; and the issue is whether the facts satisfy the legal rule." *Id.*

 The bankruptcy court's dismissal of the debtor's complaint, under Fed. R.Bankr.P. 7012(b)/Fed.R.Civ.P. 12(b)(6), is also subject to *de novo* review. *In re Rogstad,* 126 F.3d 1224, 1228 (9th Cir. 1997). "When considering a motion to dismiss for failure to state a claim, a court must take as true all allegations of material fact and construe them in a light most favorable to the nonmoving party." *In re Stoll,* 252 B.R. 492, 495 (9th Cir. BAP 2000). "However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir.1998). The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *O'Loghlin v. County of Orange,* 229 F.3d 871, 874 (9th Cir.2000).

### DISCUSSION

 Section 523(a)(7) provides that a debt is exempted from discharge "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty." Thus, the three requirements for a nondischargeable debt under this provision are:

(1) a "fine, penalty, or forfeiture"

(2) "payable to and for the benefit of a governmental unit"

(3) that is "not compensation for actual pecuniary loss."

The debtor does not argue that the restitution judgment is "payable to and for the benefit of a governmental unit," *i.e.,* the City. He contends, however, that the civil restitution judgment, which was entered after his criminal·probation and jail time had expired, was no longer a penal sanction and that its only purpose was pecuniary, *i.e.,* compensation to the City for its clean-up costs.

The debtor cites only one case to support his theory, *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Interestingly, *Kelly* held that in chapter 7 cases a state court criminal restitution order is *nondischargeable* under § 523(a)(7).[5] *Kelly,* 479 U.S. at 53, 107 S.Ct. 353. *See also Penn. Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 564, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (unequivocally holding that criminal resti-

---

his constitutional rights during the probation proceedings in state court. According to the debtor's Statement of Facts, however, he had appealed the superior court order modifying his probation, and assigned as error these same constitutional issues. *See* Opening Brief at 10. That order was affirmed by the California appellate court. *See* Order after Remittitur, February 22, 1999, p. 2.

The bankruptcy court and the panel lack jurisdiction to review the propriety of the final state court judgment upon which the civil restitution judgment was based. *Bran-*

*son v. Nott,* 62 F.3d 287, 291 (9th Cir.1995) (federal courts lack subject matter jurisdiction to review the final determinations of state courts in judicial proceedings even when the challenge to a state court decision involves federal constitutional issues); *In re Audre, Inc.,* 216 B.R. 19, 26 (9th Cir. BAP 1997) (applying *Rooker–Feldman* doctrine).

5. A gap in the Code that allowed the discharge of restitution in a chapter 13 case was closed by the 1990 amendments. *See* Crime Control Act of 1990, Pub.L. No. 101–647 (1990); § 1328(a).

tution is a "debt" as defined by § 101 of the Bankruptcy Code).

■ In applying § 523(a)(7), the Supreme Court in *Kelly* held that: "[I]nterpretation of the Code also must reflect the basis for this judicial exception, a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." *Kelly,* 479 U.S. at 47, 107 S.Ct. 353; *accord: In re Gruntz,* 202 F.3d 1074, 1084 (9th Cir.2000); *In re Soderling,* 998 F.2d 730, 732–33 (9th Cir.1993). The Supreme Court also expressed concern that state court judges would be hampered in their ability to fashion appropriate "combinations of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems" if such judgments were subject to discharge by the bankruptcy courts. *Kelly,* 479 U.S. at 49, 107 S.Ct. 353.

The debtor attempts to distinguish *Kelly* on its facts. In *Kelly,* the debtor was required to pay restitution to the Connecticut welfare authority from which she had fraudulently received payments. She was still on probation when she filed a bankruptcy petition. In contrast, the restitution debt here is a post-probation civil judgment in favor of the creditor City.

■ To resolve this appeal, we must focus on the structure of the California Penal Code and the legislative purpose of a civil judgment for restitution. Although a monetary sanction may be imposed by the state, and pursuant to a state law, the sanction must be "penal" to fall within the § 523(a)(7) exemption. Only monetary sanctions that are intended as punishment are "fines or penalties," as that term is used in § 523(a)(7). *In re Taggart,* 249 F.3d 987, 992–94 (9th Cir.

2001) (determining that monetary sanction imposed under California's statute for discretionary imposition of costs, in State Bar disciplinary proceedings, was dischargeable compensatory reimbursement for actual expenses of the state).

■ The debtor's restitution obligation arose in, and was ordered in conjunction with, a state criminal prosecution. In general, such criminal proceedings are carried out on behalf of all of the citizens of the state and not for a particular creditor. *Gruntz,* 202 F.3d at 1086. California's Penal Code provides for restitution to the victim as a condition of the defendant's sentence of probation. In *Kelly,* the Supreme Court noted that restitution, while compensatory from the perspective of the victim, also has a penal aspect:

> Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.

*Kelly,* 479 U.S. at 49 n. 10, 107 S.Ct. 353.

■ Thus, nondischargeable restitution may be determined by reference to the amount of harm caused by the offender. *Kelly,* 479 U.S. at 51–52, 107 S.Ct. 353. In this case the restitution ordered was the same amount as the City's damages. That fact does not alter its penal character. The panel has explained:

> As the Supreme Court recognized, a central feature of restitution is its relationship to the pecuniary loss of the victim. But the Court concluded resti-

tution orders "are not assessed 'for … compensation' of the victim", but rather to promote "the penal and rehabilitative interests of the State." 479 U.S. at 53, 107 S.Ct. at 363.

*In re Steiger,* 159 B.R. 907, 912 (9th Cir. BAP 1993).

California law further provides for the enforcement of a criminal restitution obligation as a civil money judgment. Cal.Penal Code §§ 1202.4, 1203(b)(2)(C), and 1214. Cal.Penal Code § 1214(b) (Deering Supp.2001) also states, in relevant part:

> A victim shall have access to all resources available under the law to enforce the restitution order, including, but not limited to, access to the defendant's financial records, use of wage garnishment and lien procedures, information regarding the defendant's assets, and the ability to apply for restitution from any fund established for the purpose of compensating victims in civil cases. Any portion of a restitution order that remains unsatisfied after a defendant is no longer on probation or parole is enforceable by the victim pursuant to this section.

 Clearly, the California legislature intended that a restitution obligation should be paid even if payment was not complete at the conclusion of the criminal sentence. It therefore provided for enforcement of the restitution debt through a civil judgment. In this case, the Superior Court's Order After Remittitur stated:

> Additionally, defendant remains liable pursuant to Penal Code Section 1214(b) for the restitution that remains unpaid at the expiration of probation. The unpaid restitution, i.e. $6,856.73, becomes a civil judgment upon the expiration of

probation and collects interest at 10% pursuant to PC Section 1214.5.

The debtor's restitution liability remained viable under the Penal Code. The fact that California law allows enforcement of the restitution obligation as a civil judgment did not divest the restitution obligation of its identity as part of the criminal sentence.

The panel considered a similar argument in *Steiger.* There, the state sought to enforce a restitution judgment imposed as part of a vehicular homicide conviction. The debtor filed a nondischargeability complaint and argued, *inter alia,* that *Kelly* was not controlling because the victims were individuals, and the civil judgment was enforceable by the individuals. The panel affirmed the bankruptcy court's holding that it made no difference that the victim may be empowered to enforce the restitution order, because such orders "operate 'for the benefit of' the State." *Steiger,* 159 B.R. at 911 (quoting *Kelly,* 479 U.S. at 53, 107 S.Ct. at 363).[6]

"[T]he limitation of § 523(a)(7) to fines assessed 'for the benefit of a governmental unit' was intended to prevent application of that subsection *to wholly private penalties* such as punitive damages." *Kelly,* 479 U.S. at 51 n. 13, 107 S.Ct. 353 (emphasis added). In this case, the victim City met the plain requirement of § 523(a)(7) that the debt be "payable to and for the benefit of a governmental unit." *See* § 101(27) (defining "governmental unit" to include a municipality). Furthermore, the plain language of the statute does not require the governmental unit that benefits from the payment of the penalty to be the same governmental unit which imposed the penalty. Assuming, *arguendo,* that the "governmental unit" referred to in § 523(a)(7)

6. Although the debtor here has brought the adversary proceeding against the creditor City, and not against the prosecuting state, as

in *Steiger,* that factual distinction does not change the application of the law as propounded by *Kelly.* *See* discussion below.

must also be the prosecuting entity, *i.e.,* the state of California, such that we must analyze the City's position as being that of a third-party victim, our conclusion of non-dischargeability would not change. The Supreme Court in *Kelly* read § 523(a)(7) liberally in order to preserve from discharge restitution that was equal to the amount of the victim's loss, even though on its face, such restitution did not appear to meet the explicit requirement of § 523(a)(7) that it not be "compensation for actual pecuniary loss." The Court eschewed a mechanical interpretation of this discharge exception and "made it abundantly clear that the Bankruptcy Code must be interpreted 'in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems.'" *In re Nelson,* 91 B.R. 904, 905 (N.D.Cal.1988) (quoting *Kelly,* 479 U.S. at 44, 107 S.Ct. 353). *See also Davenport,* 495 U.S. at 563, 110 S.Ct. 2126 (stating that its holding that criminal restitution was a dischargeable debt in a chapter 13 case [before amendment of the code] "does not signal a retreat from the principles applied in *Kelly*").

Recently, other circuit courts have analyzed the benefit requirement of § 523(a)(7) by focusing, not on the penal nature of restitution, but on the literal requirements that the restitution must be "payable to" a governmental unit as well as be "for the benefit of" a governmental unit. In *In re Rashid,* 210 F.3d 201 (3rd Cir.2000), it was held that a chapter 7 debtor's federal restitution obligation was dischargeable because it was payable to a private victim.[7] The court noted that federal criminal restitution orders and civil restitution orders do not implicate "the federal court's longstanding 'reluctan[ce] to interpret federal bankruptcy statutes to remit state criminal judgments.'" *Id.* at 208 n. 3 (quoting *Kelly,* 479 U.S. at 44, 107 S.Ct. 353). Our case is distinguishable from *Rashid* because it concerns a restitution order in a state criminal judgment.

Another circuit court has held that civil restitution awarded to victims of consumer fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act was dischargeable because it was not payable to, nor did it benefit, a governmental unit. *See In re Towers,* 162 F.3d 952, 954–56 (7th Cir.1998), *cert. denied,* 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999). Again, our case is distinguishable because the restitution was imposed in a criminal proceeding, and was only enforced through a civil judgment.

The restitution obligation in this case was part of the panoply of punishments available in the California Penal Code for the debtor's offense. Although not literally "payable to" the state, the restitution was ordered by the state to be paid. Although not benefitting the state directly, the restitution order promoted law enforcement by deterrence and served to protect society as a whole. To allow a debtor to discharge this obligation would be abhorrent to the standards of federalism expressed in *Kelly* that bankruptcy statutes should not be interpreted so as to remit state criminal judgments. *See Kelly,* 479 U.S. at 44, 107 S.Ct. 353. Probationers should not be encouraged by the Bankruptcy Code to withhold payment until their probation or jail time expires, and then attempt to discharge the debt in bankruptcy.

---

**7.** *Rashid* involved a restitution obligation that was imposed before the 1994 amendments to the Bankruptcy Code. Section 523(a)(13) now provides that "any payment of an order of restitution under title 18, United States Code" is nondischargeable.

In this vein, the debtor's final argument is that the restitution judgment was not a punishment for his wrongdoing, but that it was imposed due to his "protracted unemployment and indigence," which made him, and continues to make him, unable to pay the restitution order.

The debtor's contention that the reason for the ensuing civil judgment was his failure to compensate the City misconstrues the rehabilitative and penal nature of the state's criminal sentencing scheme. The restitution order was part of the penalty for the debtor's crime. When he was sentenced, the Penal Code provided that "[i]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims...." Cal.Penal Code § 1202.4(f) (Deering Supp.2001). In its 1994 amendments to that section, the California Legislature recognized that restitution has a "rehabilitative effect on criminals" and is a "deterrent to future criminality." *See* § 1 Cal.Stats.1994, c. 1106 (A.B.3169). In 1997, the state court held a probation revocation hearing. It determined that the debtor's probation would be modified to one year's imprisonment. The court maintained the restitution obligation.

Furthermore, the debtor's suggestion that restitution was ordered for the wrong reasons is an improper collateral attack on the final state court restitution order and judgment. *Watts v. Pinckney,* 752 F.2d 406, 410 (9th Cir.1985) (doctrine of *res judicata* bars a collateral attack on a final judgment). Additionally, the debtor's financial inability to pay the restitution in his bankruptcy case is not a factor in analyzing nondischargeability under § 523(a)(7).

Therefore, we hold that the restitution obligation, originally imposed as a condition of the debtor's probation, did not transform into a dischargeable debt simply because it was also enforceable as a civil judgment by the victim.

## CONCLUSION

The debtor has argued that, after state criminal proceedings terminated and a restitution order became a civil judgment, such judgment was no longer penal in nature. This view would thwart the goals of both the California Penal Code and the Bankruptcy Code, and must be rejected. The civil restitution judgment in favor of the City was a means of enforcing a sentence imposed on the debtor under California's criminal justice system. Therefore, it was nondischargeable under the provisions of § 523(a)(7). The bankruptcy court's order dismissing the debtor's complaint for failure to state a claim is **AFFIRMED.**

KLEIN, Bankruptcy Judge, concurring:

We should affirm merely because the Supreme Court decision in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), is dispositive of the discharge status under 11 U.S.C. § 523(a)(7) of restitution ordered as a condition of probation in a state criminal case. The majority's supplementary quest for an underlying penal purpose is superfluous to restitution that is a condition of probation in state criminal proceedings. *Kelly* controls.

I write separately to sound a note of caution about the need to be aware of key distinctions when confronting the puzzling subject of restitution in bankruptcy.

### I

*Kelly* controls this appeal because the facts regarding the same issue are so similar that I perceive no principled way to distinguish our appeal. *Kelly* is the authoritative construction of § 523(a)(7) with respect to restitution orders entered as

conditions of probation in state criminal cases.

### A

Both cases are chapter 7 liquidation cases. Both feature governmental units as the debtor's victims and the beneficiaries of the restitution orders. Both restitution orders were entered as conditions of probation in criminal sentences. Both involve debtors who contend that their respective restitution obligations are not excepted from discharge per § 523(a)(7).

In *Kelly*, it was a species of Connecticut welfare fraud (larceny in the second degree for wrongful receipt of welfare benefits); the loss to the governmental unit was the welfare payments. For Mr. Warfel, it was two misdemeanor counts of unsafe storage of chemicals and failure to have a chemical storage permit mandated by applicable law; the loss to the governmental unit was the $6,953.59 expense of the toxic clean-up that followed the emergency response to a fire at his residence.

There are three main differences. Probation had not ended when the *Kelly* probationer obtained her chapter 7 discharge; Warfel's had. Connecticut law did not provide for a criminal restitution order to be translated into a civil judgment; California law does. In *Kelly*, Connecticut wanted ill-gotten gains disgorged, while Warfel is being asked to reimburse clean-up expenses. These differences, however, do not appear to be enough to distinguish our appeal from *Kelly*.

### B

As I read *Kelly*, the Supreme Court started from the premise that under the former Bankruptcy Act of 1898 there was a judge-made exception to discharge for state-court restitution orders and proceeded to conclude that this judge-made exception was carried forward into the Bankruptcy Code of 1978. *Kelly*, 479 U.S. at 50–51, 107 S.Ct. 353.

The Court discerned the perpetuation of that pre-Code judge-made exception to discharge as reposing in § 523(a)(7):

> (a) A discharge [except under § 1328(a)] does not discharge an individual debtor from any debt—...
>
> > (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than [certain tax penalties]. . . .

11 U.S.C. § 523(a)(7).

The problem was that the pre-Code restitution exception did not neatly fit into the language of § 523(a)(7). The section does not mention restitution. Moreover, it excludes orders that are compensation for actual pecuniary loss.

The way the Supreme Court shoehorned the old doctrine into new statute was to reason that the language of § 523(a)(7) was "subject to interpretation" in three respects. *Kelly*, 479 U.S. at 50, 107 S.Ct. 353. First, the term "fine" was interpreted to subsume restitution obligations. *Id.* at 51–52, 107 S.Ct. 353. Second, the phrase "payable to or for the benefit of a governmental unit" was interpreted to subsume restitution payments that are to be paid to victims that are governmental units.[8] *Id.* at 52, 107 S.Ct. 353. Third, the phrase excluding "compensation for actual pecuniary loss" was interpreted not to encompass restitution orders because "the victim has no control over the amount of restitution awarded or the decision to

---

**8.** The Court's discussion suggested that it would not matter if restitution was paid to a non-governmental victim. As the actual victim was a governmental unit, the Court's broader comment is arguably dictum.

award restitution." *Id.* at 52, 107 S.Ct. 353.

In short, the Court stretched the statute by creating some apparent legal fictions. A criminal restitution order is a "fine." Criminal restitution can be paid to victims and is not "compensation for actual pecuniary loss" notwithstanding that it may be based in whole or in part on the actual loss.

While this style of interpretation may be out of fashion, what matters for our purposes is that *Kelly* is the authoritative interpretation of § 523(a)(7) regarding criminal restitution orders. It is controlling law.

### C

Under the *Kelly* analysis, Warfel loses. *Kelly* says that his restitution obligation is a "fine" because it was rendered as a condition of probation in criminal sentencing.

The fact that it is a restitution order automatically means that it is payable "to and for the benefit of a governmental unit" even though it is payable to his victim (the entity that paid to clean up his unlawfully stored hazardous materials).

Depending upon how narrowly one construes the discussion in *Kelly* regarding the permissibility of payments to victims, it was either mere coincidence, or Warfel's misfortune, that the victim is itself a governmental unit.[9]

Finally, although Warfel's restitution was for the actual cost of the toxic cleanup,[10] *Kelly* says it is not "compensation for

---

9. Although the Ninth Circuit has not squarely decided whether the payee's identity matters, it extended *Kelly* to protect from discharge a federal criminal restitution order in favor of a governmental payee without mentioning the issue. *FDIC v. Soderling (In re Soderling),* 998 F.2d 730 (9th Cir.1993).

10. It appears restitution was ordered per three provisions of the California Penal Code: §§ 1203.1(e), 1203.11, and 1214.5:

§ *1203.1(e)* The court shall also consider whether the defendant as a condition of probation shall make restitution to a public agency for the costs of an emergency response pursuant to Article 8 (commencing with Section 53150) of Chapter 1 of Part 1 of Division 2 of the Government Code.

Cal.Penal Code § 1203.1(e).

§ *1203.11* In any case in which, pursuant to Section 1203.1, the court orders the defendant, as a condition of probation, to make restitution to a public agency for the costs of an emergency response, all of the following shall apply:

(a) The probation department shall obtain the actual costs for an emergency response from a public agency, and shall include the public agency's documents supporting the actual costs for the emergency response in the probation department's sentencing report to the court.

(b) At the sentencing hearing, the defendant has the right to confront witnesses and present evidence in opposition to the amount claimed to be due to the public agency for its actual costs for the emergency response.

(c) The collection of the emergency response costs is the responsibility of the public agency seeking the reimbursement. If a defendant fails to make restitution payment when a payment is due, the public agency shall by verified declaration notify the probation department of the delinquency. The probation department shall make an investigation of the delinquency and shall make a report to the court of the delinquency. The report shall contain any recommendation that the probation officer finds to be relevant regarding the delinquency and future payments. The court, after a hearing on the delinquency, may make modifications to the existing order in the furtherance of justice.

(d) The defendant has the right to petition the court for a modification of the emergency response reimbursement order whenever he or she has sustained a substantial change in economic circumstances. The defendant has a right to a hearing on the proposed modification, and the court may make any modification to the existing order in the furtherance of justice.

Cal.Penal Code § 1203.1*l.*

actual pecuniary loss" because the victim cannot force an award of, or any specific amount of, restitution.

The fact that Warfel's probation expired before he obtained his bankruptcy discharge should make no difference in the *Kelly* analysis. A state can provide for collection of a criminal fine by any means it wishes, including civil process. Likewise, a state can provide that an unpaid fine remain enforceable after a term of probation ends. This is exactly what California does.[11]

As long as the initial restitution obligation was within the *Kelly* definition of a fine, the termination of probation does not change its character as a fine.

In short, *Kelly* leaves us no choice but to affirm.

## II

Now for the note of caution regarding opportunities for confusion about restitution orders in bankruptcy cases.

### A

Restitution is a broad concept that covers a spectrum from a traditional equitable remedy in civil litigation to a specific criminal measure.

Restitution debts at the criminal end of the spectrum, such as restitution entered as a condition of probation in criminal proceedings, are not discharged in bankruptcy. Conversely, restitution ordered as an equitable remedy in civil actions between private parties are not excepted from bankruptcy discharge without some independent basis for nondischargeability, such as fraud, breach of fiduciary duty, or willful and malicious conduct. *E.g.,* 11 U.S.C. §§ 523(a)(2), (4) & (6).

The remaining issues involve the treatment of restitution orders that are in the middle of the spectrum. Two of the recent court of appeals decisions that figure in our majority opinion occupy that middle ground.

### B

At the outset, one needs to survey the boundaries of restitution debts that are excepted from bankruptcy discharge merely because they are restitution debts. These are defined by an agglomeration of statutes.

Section § 523(a)(7), which is the subject of this appeal, excludes a debt from chapter 7 discharge [12] "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a govern-

---

*§ 1214.5(a)* In any case in which the defendant is ordered to pay more than fifty dollars ($50) in restitution as a condition of probation, the court may, as an additional condition of probation since the court determines that the defendant has the ability to pay, as defined in Section 1203.1b(b), order the defendant to pay interest at the rate of 10 percent per annum on the principal amount remaining unsatisfied.
Cal.Penal Code § 1214.5(a).

**11.** California Penal Code § 1214.2 provides in relevant part:
(a) [i]f a defendant is ordered to pay a fine as a condition of probation, the order to pay a fine may be enforced during the term of pro-

bation in the same manner as is provided for the enforcement of money judgments.
(b) [a]n order to pay a fine as a condition of probation may also be enforced as follows: ... (2) If any balance remains unpaid at the end of the term of probation, in the same manner as a judgment in a civil action.
Cal.Penal Code § 1214.2.

**12.** For convenience, the term "chapter 7 discharge" is used as a proxy for "discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b)" in the preambular language of § 523(a), and includes discharges under chapters 7, 11, and 12, as well as the so-called "hardship" discharge under chapter 13. 11 U.S.C. § 523(a).

mental unit, and is not compensation for actual pecuniary loss, other than [certain tax penalties]." The *Kelly* gloss has already been described.

The most significant of the other statutory provisions is Bankruptcy Code § 1328(a)(3), which provides that a chapter 13 so-called "super-discharge" does not encompass any debt "for restitution, for a criminal fine, included in a sentence on the debtor's conviction of a crime." 11 U.S.C. § 1328(a)(3).

This language, which Congress added to § 1328 in 1990 to overrule *Penn. Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), is broader than § 523(a)(7) in that neither the identity of the payee, nor the beneficiary of the payment, nor the compensatory nature of a restitution award is relevant.

Section 1328(a)(3), in effect, enacts into positive law for chapter 13 "super-discharges" the legal fictions established in *Kelly* for chapter 7 discharges. Correlatively, § 1328(a)(3) makes narrow construction of *Kelly* more difficult. Construing *Kelly* to permit chapter 7 discharge of some criminal restitution awards could lead to a unique situation (which, as noted below, has happened in the Third Circuit) in which a chapter 7 discharge would be more powerful than a chapter 13 "super-discharge."

Next, Congress added § 523(a)(13) in 1994 to deal with federal criminal restitution. A debt is excepted from chapter 7 discharge if it is "for any payment of an order of restitution issued under" the Federal Criminal Code. 11 U.S.C. § 523(a)(13).

Finally, the Criminal Code was amended in 1994 to adopt a bankruptcy-resistant federal victim restitution scheme. 18 U.S.C. §§ 3663–64. According to that scheme, restitution is to be ordered to each victim in the full amount of each victim's losses without consideration of the economic circumstances of the defendant, and the court, in the same manner as with fines, specifies the manner of payment and a schedule in light of the defendant's economic circumstances. 18 U.S.C. § 3664(f). The United States can enforce the restitution order, and the victim is entitled to an abstract of judgment that can be registered and enforced in the same manner as any federal civil money judgment. 18 U.S.C. § 3664(m). Restitution orders and fines are expressly excepted from all bankruptcy discharges, including the § 1328(a) "super-discharge." 18 U.S.C. § 3613(e) & (f).[13]

## C

This background enables better understanding of the recent court of appeals decisions discussed in the majority opinion.

The Ninth Circuit recently ventured into the middle ground between civil and criminal restitution under § 523(a)(7) when presented with an attorney discipline cost award entered by California's State Bar Court. It was not entered in a criminal matter and hence was not controlled by *Kelly*. The Ninth Circuit reasoned that in order for the cost award to qualify as a

---

**13.** The pertinent provisions are:

(e) Discharge of debt inapplicable.—No discharge of debts in a proceeding pursuant to any chapter of title 11, United States Code, shall discharge liability to pay a fine pursuant to this section, and a lien filed as prescribed by this section shall not be voided in a bankruptcy proceeding.

(f) Applicability to order of restitution.—In accordance with section 3664(m)(1)(A) of this title, all provisions of this section are available to the United States for the enforcement of an order of restitution.

18 U.S.C. § 3613(e)–(f).

"fine, penalty, or forfeiture" within the meaning of § 523(a)(7) the state statute authorizing the award had to be "penal" in nature. Accordingly, the debt was not excepted from discharge. *State Bar v. Taggart (In re Taggart)*, 249 F.3d 987, 992–94 (9th Cir.2001). It is, of course, that decision that precipitated our majority's quest for "penal" purpose in the instant appeal.

The Seventh Circuit dealt with a civil restitution order in favor of consumer fraud victims that had been issued pursuant to a state consumer fraud and deceptive business practices statute. *Towers v. Illinois (In re Towers)*, 162 F.3d 952, 954–56 (7th Cir.1998), *cert. denied,* 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999).

The Seventh Circuit construed *Kelly* narrowly as limited to state criminal restitution orders and focused upon the language of § 523(a)(7), unencumbered by the *Kelly* gloss. Moreover, it reasoned that §§ 523(a)(2), (4), and (6), were available discharge exceptions that protect the "deterrence effects of restitution" so that the court could resist the result-oriented temptation of "hammering away at 'for the benefit of' until it fit the mold" of § 523(a)(7). *Towers,* 162 F.3d at 956. It concluded that the channeling of restitution payments to the victims was fatal to the § 523(a)(7) discharge exception.

The Third Circuit adoption of *Towers'* narrow reading of *Kelly* came in an appeal that was a non-recurring artifact. A federal criminal restitution order that antedated the 1994 enactment of § 523(a)(13) was ineligible for the § 523(a)(7) discharge exception because it was payable to the victim. *Rashid v. Powell (In re Rashid),* 210 F.3d 201, 206–08 (3d Cir.2000).

In so holding, the Third Circuit limited *Kelly* to state criminal restitution orders and did not mention the implications that

may follow from the fact that the federal restitution judgment was probably nondischargeable in chapter 13 by virtue of § 1328(a)(3). The ironic, and apparently unique, consequence is that Rashid's chapter 7 discharge turned out to be more powerful than the chapter 13 "super-discharge."

Thus, courts of appeals are putting a sharper point on the pencil in § 523(a)(7) matters and looking behind restitution orders that are not entered in criminal proceedings. The *Taggart* lesson in the Ninth Circuit is that one must find "penal" purpose in the authority for restitution in a non-criminal setting. The Third and Seventh Circuits both view paying restitution to non-governmental victims as fatal to § 523(a)(7) nondischargeability.

All of those decisions, however, came in cases in which the courts could distinguish *Kelly* as not controlling. Once freed of the *Kelly* gloss, they were able to focus on the implications of the actual language of § 523(a)(7) in connection with such matters as "penal" purpose or who was getting the money.

In this appeal, I see no principled distinction from *Kelly.* Hence, there is no need to look for "penal" purpose. Indeed, if we were to conclude that there is no "penal" purpose in the underlying statute, *Kelly* would nevertheless mandate affirmance.