# United States Court of Appeals
## For the First Circuit

---

No. 00-1127

SHELDON WHITEHOUSE, Attorney General,
STATE OF RHODE ISLAND, and
JAN REITSMA, Director of the Rhode Island
Department of Environmental Management,

Plaintiffs, Appellants,

v.

DAVID LAROCHE, ET AL.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

---

Before

Torruella, Circuit Judge,

Campbell and Cyr, Senior Circuit Judges,

---

Terence J. Tierney, Assistant Attorney General, with whom
Gary Powers, Deputy Chief Legal Counsel, Department of
Environmental Management, was on brief for appellants.
Barry J. Kusinitz for appellee David LaRoche.

January 17, 2002

_____

**CYR, Senior Circuit Judge.** This appeal by the Rhode Island Attorney General and the Director of the Rhode Island Department of Environmental Management challenges various rulings which prompted the district court to hold that appellee David LaRoche's obligations to the State of Rhode Island, for its costs in remediating water contamination on property owned by LaRoche and for related civil penalties, were expunged by the chapter 7 discharge subsequently obtained by LaRoche. We vacate and remand, with directions that judgment enter for appellants.

## I

### BACKGROUND

In 1988, appellants joined in citizen lawsuits brought against LaRoche in the United States District Court for the District of Rhode Island, claiming violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq., and the Rhode Island Water Pollution Control Act ("RIWPCA"), R.I. Gen. Laws § 46-12-1 et seq. (the "CWA/RIWPCA action"). Ultimately, the district court entered partial summary judgment for appellants, after determining that LaRoche had known, prior to purchasing the property, that its faulty septic system was polluting an adjacent river. See Friends of Sakonnet v. Dutra, 738 F. Supp. 623 (D.R.I. 1990). The amount of the remedial damages award against LaRoche remained unresolved.

3

Creditors instituted involuntary chapter 11 reorganization proceedings against LaRoche in January 1991; the order for relief was entered in February 1991, see In re LaRoche, 969 F.2d 1299, 1300 (1st Cir. 1992), and the chapter 11 trustee was appointed on June 4, 1991.

Meanwhile, the parties had negotiated a settlement of all the remedial issues in the CWA/RIWPCA action pending before the federal district court. Whereupon the district court entered a consent decree, which stated, inter alia: "The intention of the parties is to resolve any pending disputes arising out of this matter. The only responsibilities and obligations that will survive are those set forth in this Stipulation."

In due course, a special master was appointed to marshal a settlement fund from the State and the former owners of the LaRoche property for the purpose of acquiring an adjacent tract of land upon which to construct a new waste water collection and treatment facility. Any excess acreage, over and above that required for the new facility, was to be sold to cover related project costs.

LaRoche agreed to reimburse the State for any "shortfall amount," defined as the difference between ninety percent of the cost of the new waste water collection and

4

treatment facility and the net proceeds from the sale of any excess acreage. In addition, LaRoche promised to "affirm his obligation to pay the [shortfall amount], to the extent then unpaid, as a debt not discharged in any bankruptcy proceeding in which he is the bankrupt whether now pending or hereafter filed."[1] Finally, LaRoche pledged to "procure an order of the United States Bankruptcy Court for the District of Rhode Island in [his involuntary bankruptcy proceeding] affirming his obligation to pay the [shortfall amount] and to perform his other obligations hereunder."

All parties agreed to proceed "expeditiously" and "in good faith" with their respective obligations under the consent decree, which further provided as follows:

> <u>LaRoche</u> hereby <u>agrees</u> <u>to</u> the <u>imposition</u> <u>of</u> <u>a</u> <u>civil</u> <u>penalty</u> under the Rhode Island Water Pollution Control Act and regulations issued thereunder <u>equal</u> <u>to</u> <u>the</u> [shortfall amount]. DEM and the Attorney General agree that <u>the</u>

---

[1] By negative inference, from Federal Rule of Bankruptcy Procedure 4008 ("A motion by the debtor for approval of a reaffirmation agreement shall be filed before or at the hearing."), only the chapter 7 debtor may request bankruptcy court approval of a reaffirmation agreement. <u>See</u> <u>BankBoston</u> v. <u>Claflin</u> (<u>In re Claflin</u>), 249 B.R. 840, 843 (B.A.P. 1st Cir. 2000); <u>In re Carlos</u>, 215 B.R. 52, 61 (Bankr. C.D. Cal. 1997); <u>In re Newsome</u>, 3 B.R. 626, 629 (Bankr. D. W. Va. 1980) ("[T]o permit creditors to make applications for reaffirmations would contravene the intent of Congress and permit in many instances the very acts the Congress sought to condemn."); 4 Lawrence P. King, <u>Collier on Bankruptcy</u> ¶ 524.04, at 524-30 (citing Fed. R. Bankr. P. 4008).

> imposition of such civil penalty will be stayed for so long as LaRoche complies with his obligations under Section II.3.C of this Stipulation [viz., to seek reaffirmation of his obligation to pay this debt in his involuntary bankruptcy case] and/or for so long as any order procured from the Bankruptcy Court under Section II.3.D [viz., an order approving LaRoche's reaffirmation of his prepetition debt] remains in effect. LaRoche specifically agrees that the civil penalty imposed hereunder constitutes a debt for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, is not compensation for actual pecuniary loss and is specifically non-dischargeable under 11 U.S.C. [§] 523(a)(7).

(Emphasis added.) The district court explicitly retained "continuing jurisdiction over this Stipulation and the performance of the parties hereto."

Although LaRoche was granted a chapter 7 discharge, see 11 U.S.C. § 727,[2] on March 3, 1995, it was more than two years later, on April 10, 1997, before he finally submitted a motion to reaffirm the "shortfall amount" indebtedness.

Following a hearing which appellants elected not to attend, the bankruptcy court rejected the motion to reaffirm submitted by LaRoche.[3] At the same time, the bankruptcy court

---

[2]The chapter 11 proceeding was converted to chapter 7 on August 1, 1994.

[3]Although the basis for the denial by the bankruptcy court is not disclosed in the record on appeal, the parties are in agreement that the ruling was grounded in the United States Trustee's objection that the motion to reaffirm was untimely.

6

expressed concern that its rejection of the motion to reaffirm might obstruct the State's efforts to recover the "shortfall amount." Accordingly, the bankruptcy court directed that its order — rejecting LaRoche's motion to reaffirm the "shortfall amount" indebtedness — be served upon all parties to the CWA/RIWPCA consent decree and "[t]hat all entities who oppose the entry of this Order shall have ten (10) days from the entry of this Order within which to file a motion under Fed. R. Bankr. P. 9023 to alter and amend this Order."

Appellants elected not to submit a Rule 9023 motion, opting instead for a motion before the district court (which had retained jurisdiction over the CWA/RIWPCA consent decree) seeking a judicial declaration that LaRoche had breached the reaffirmation agreement, thereby rendering himself liable for the alternative civil penalty in a sum equal to the "shortfall amount," estimated at more than one million dollars. LaRoche responded that (i) the consent decree was void and unenforceable due to appellants' failure to comply with the prerequisites to reaffirmation, see Bankruptcy Code § 524(c), 11 U.S.C. § 524(c), and (ii) consequently, the general discharge he was granted

---

See Fed. R. Bankr. P. 4008 (stating that hearing on application to reaffirm prepetition debt is to be held within 30 days of order granting or denying general discharge). For present purposes, we accept their characterization.

relieved him of all liabilities, including those asserted by appellants.

For their part, appellants argued that the consent decree itself expressly defined the civil penalty imposed upon LaRoche as a fine payable to and for the benefit of a governmental unit, rather than as compensation for actual pecuniary loss. Accordingly, appellants contended, the civil penalty imposed against LaRoche was rendered nondischargeable as a matter of law. See id. § 523(a)(7).

In due course, the district court determined that the characterization which the consent decree ascribed to the LaRoche indebtedness for the civil penalty in the shortfall amount — viz., a nondischargeable "civil penalty" — was not conclusive. Consequently, the district court opined, in order to safeguard their rights it was incumbent upon appellants not only to have submitted a proof of claim, but also to have commenced an adversary proceeding to obtain a bankruptcy court ruling that the LaRoche indebtedness for the shortfall amount was a nondischargeable civil penalty. Failing that, the district court reasoned, the general discharge in bankruptcy granted LaRoche in the bankruptcy court presumptively discharged the civil penalty in the "shortfall amount" as contemplated by the CWA/RIWPCA consent decree.

8

**DISCUSSION**

Appellants contend that the explicit language employed in the CWA/RIWPCA consent decree — triggering a contingent "civil penalty" if and whenever LaRoche were to default on his obligation to procure bankruptcy court approval of the reaffirmation agreement relating to the "shortfall amount" indebtedness to appellants — rendered the civil penalty nondischargeable under Bankruptcy Code § 523(a)(7), 11 U.S.C. § 523(a)(7). Accordingly, appellants insist, the interpretation the district court ascribed to the CWA/RIWPCA consent decree contravened the "law of the case" doctrine, which "makes binding upon a court a ruling made [in] the same . . . level [of court] during prior stages of the same litigation." Lacy v. Gardino, 791 F.2d 980, 984 (1st Cir. 1986).

The district court ruling — viz., that appellants failed either to establish or preserve their entitlement to a judicial determination that their claim was excepted from discharge — presents us with a mixed question of law and fact subject to de novo review. See, e.g., Warfel v. City of Saratoga, 268 B.R. 205, 209 (B.A.P. 9th Cir. 2001) (noting that dischargeability exceptions under § 523(a)(7) normally turn upon whether undisputed facts fit pertinent legal rule). Similarly,

a judicial interpretation of the terms of a consent decree is subject to plenary review. See Braxton v. United States, 500 U.S. 344, 350 (1991).

Bankruptcy Code § 523(a)(7) excepts from discharge in bankruptcy any debt "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, [which] is not compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7). Thus, in order to establish that the instant consent decree imposed a nondischargeable obligation upon LaRoche, appellants needed to establish that their claim was based on (i) a "fine, penalty, or forfeiture," (ii) "payable to and for the benefit of a governmental unit," and (iii) "not compensation for actual pecuniary loss." Id. Were appellants required to relitigate the dischargeability issue de novo, there may well have been substantial impediments to overcome. We explain.

Although Bankruptcy Code § 523(a)(7) applies both to civil and criminal penalties, see U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 64 F.3d 920, 927-28 (4th Cir. 1995), in order to qualify for a dischargeability exception under subsection 523(a)(7), normally the particular penalty must serve some "punitive" or "rehabilitative" governmental aim, rather than a purely

10

compensatory purpose.  See Kelly v. Robinson, 479 U.S. 36, 52 (1986).

Appellants contend that these civil penalties, imposed pursuant to Rhode Island law, see R.I. Gen. Laws § 46-12-13, were designed to deter and remediate environmental contamination, a particularly important governmental function implemented under the State's police and regulatory powers. Moreover, appellants argue, LaRoche potentially was exposed to fines up to $25,000 per day, a sum which bears neither any obvious nor essential correlation to the amount needed to compensate the State for its actual response costs.

On the other hand, there can be no question but that the consent decree itself explicitly equates the amount of these civil penalties with the "shortfall amount," which in turn plainly was designed to reimburse the State for its actual losses, neither more nor less.  Appellants respond, however, that their decision to calculate the punitive fines under that convenient methodology cannot deprive these civil penalties of their "punitive" nature.  See, e.g., State Bar of Mich. v. Doerr (In re Doerr), 185 B.R. 533, 536-37 (Bankr. W.D. Mich. 1995). We need not resolve these issues, however, since the CWA/RIWPCA consent decree itself disposes of the contention that

11

appellants' claim is excepted from discharge under Bankruptcy Code § 523(a)(7).

First, the district court erred, as a matter of law, in ruling that appellants forfeited their rights by not commencing a timely adversary proceeding to determine the dischargeability of these debts while the LaRoche bankruptcy proceeding was pending. Normally, the Bankruptcy Code enables a debtor to obtain a discharge "from all debts that arose before the date of the order for relief." Bankruptcy Code § 727(b); see also id. § 524(a). Any claim for environmental contamination asserted against LaRoche plainly arose prior to the chapter 11 petition. See id. § 101(5) (defining "claim" as a "right to payment, whether or not such right is reduced to judgment, . . . fixed, [or] contingent"). Consequently, absent exceptional circumstances not present here, any liability incurred for environmental contamination would have been extinguished by the discharge in bankruptcy LaRoche obtained in 1995.

On the other hand, under the terms of the consent decree, LaRoche became liable to appellants for two distinct debts: the "shortfall amount" and the contingent civil penalty. Thus, as appellants correctly point out, the present case implicates two distinct dischargeability "exceptions."

12

First, a debtor represented by counsel may reaffirm any lawful debt by entering into a written reaffirmation agreement which strictly comports with the criteria prescribed in Bankruptcy Code § 524(c). The mandated criteria require that the reaffirmation agreement (i) be executed before the subsection 727(a) discharge has been granted; (ii) be in consideration for a dischargeable debt, whether or not the debtor waived discharge of the debt; (iii) include clear and conspicuous statements that the debtor may rescind the reaffirmation agreement at any time prior to the granting of the general discharge, or within sixty days after the execution of the reaffirmation agreement, whichever occurs later, and that reaffirmation is neither required by the Bankruptcy Code nor by nonbankruptcy law; (iv) be filed with the bankruptcy court; and (v) be accompanied by an affidavit of the debtor's attorney attesting that the debtor was fully advised of the legal consequences of the reaffirmation agreement, that the debtor executed the reaffirmation agreement knowingly and voluntarily, and that the reaffirmation agreement would not cause the debtor "undue [e.g., financial] hardship." Id. § 524(c).[4]

_____

[4]These detailed prophylactic measures were designed to protect unwitting debtors from creditors bent on coercing reaffirmations in relation to otherwise dischargeable prepetition debts, see In re Turner, 156 F.3d 713, 718 (7th Cir. 1998) ("A reaffirmation agreement is the only vehicle through

An entirely voluntary, fully informed reaffirmation agreement meeting the demanding requirements of Bankruptcy Code § 524 enables a creditor to undertake all lawful efforts to recover a reaffirmed debt as though no petition in bankruptcy had been filed. See Ripple v. Boston Whaler Fin. Servs. (In re Ripple), 242 B.R. 60, 64 (Bankr. M.D. Fla. 1999). Otherwise, a reaffirmation agreement is void and unenforceable. See Bessette v. Avco Fin. Servs., 230 F.3d 439, 443-44 (1st Cir. 2000); see also Bassett v. Am. Gen. Fin., Inc. (In re Bassett), 255 B.R. 747, 751 (B.A.P. 9th Cir. 2000).

The consent decree in the instant case required that LaRoche submit a motion to reaffirm only the non-"penalty" debt for the "shortfall amount" ("non-penalty shortfall debt").

---

which a dischargeable debt can survive a Chapter 7 discharge.") (citation omitted; emphasis added), a practice which would undermine fundamentally the central "fresh start" policy served by the discharge in bankruptcy. See Bessette v. Avco Fin. Servs., 230 F.3d 439, 443-44 (1st Cir. 2000), cert. denied, 121 S. Ct. 2016 (2001); In re Melendez, 235 B.R. 173, 186 (Bankr. D. Mass. 1999); see also Airlines Reporting Corp. v. Mascoll (In re Mascoll), 246 B.R. 697, 700-01 (Bankr. D.D.C. 2000).

Thus, it is immaterial that the CWA/RIWPCA consent decree did not employ the term "reaffirmation agreement." Bankruptcy Code § 524 "grew out of a long history of coercive and deceptive actions by creditors to secure reaffirmation of discharged debts. The subsections have been applied strictly by courts to carry out their remedial purposes and to ensure that they are not evaded by agreements which, though not labeled as reaffirmations, have the effect of waiving protections of the discharge." 4 Collier on Bankruptcy ¶ 524.04, at 524-30 (emphasis added).

Unlike the contingent civil penalty, which was stayed, the "non-penalty shortfall debt" presumptively constituted a dischargeable debt; that is, one which could not <u>be excepted from discharge unless LaRoche entered into a valid agreement to reaffirm it</u>.

Second, and altogether apart from whether a particular reaffirmation agreement is enforceable, an eligible creditor may be entitled to invoke any one or more among the sixteen exceptions to discharge enumerated in Bankruptcy Code § 523(a). In this connection, appellants once again posit that the alternative civil penalty contemplated by the CWA/RIWPCA consent decree came within an exception to discharge, since it "is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." Bankruptcy Code § 523(a)(7); 11 U.S.C. § 523(a)(7).

Unlike motions to reaffirm, which may be filed only by debtors, <u>see</u> <u>supra</u> note 1, either a debtor or a creditor may commence an adversary proceeding to determine the dischargeability <u>vel</u> <u>non</u> of a debt under subsection 523(a). <u>See</u> <u>Galbreath</u> v. <u>Ill. Dep't. of Rev.</u> (<u>In re Galbreath</u>), 83 B.R. 549, 551 (Bankr. S.D. Ill. 1988) (citing Fed. R. Bankr. P. 4007(a) and 7001(6)). The fundamental "fresh start" policy underlying

15

the Bankruptcy Code requires that the exceptions to discharge prescribed in subsection 523(a) be narrowly construed by the courts, and established by a preponderance of the evidence by the claimant asserting the dischargeability exception. See Grogan v. Garner, 498 U.S. 279, 286-87 (1991); Seton Hall Univ. v. Van Ess (In re Van Ess), 186 B.R. 375, 377-78 (Bankr. D.N.J. 1994).

Although Bankruptcy Code sections 523 and 524 frequently overlap in application, each entails discrete criteria and procedures pertinent to the instant case. The LaRoche reaffirmation agreement purported to serve two distinct ends: (A) LaRoche promised to submit a subsection 524(c) motion to "confirm" (viz., reaffirm) the prepetition obligation to reimburse appellants for the "shortfall amount," presumably because that indebtedness (i) had not yet been converted to a contingent civil "fine" or penalty; (ii) would not qualify for an exception to discharge under subsection 523(a)(7); and (iii) presumptively would be covered by a general discharge in bankruptcy; and (B) the reaffirmation agreement explicitly stipulated that should LaRoche default on his reaffirmation agreement with regard to the "shortfall amount," the "shortfall amount" would become a nondischargeable civil penalty under subsection 523(a)(7).

16

Appellants correctly refrain from contending that the first component of the CWA/RIWPCA consent decree (i.e., the reaffirmation provision relating to the "shortfall amount") is enforceable, since the consent decree did not include the requisite clear and conspicuous statement either informing LaRoche that he could rescind the reaffirmation agreement or that reaffirmation was not obligatory under either the Bankruptcy Code or applicable nonbankruptcy law. Moreover, the debt reaffirmation provision contained no representation that reaffirmation would not cause LaRoche "undue hardship." Accordingly, even if a timely motion to reaffirm the "shortfall amount" indebtedness had been submitted by LaRoche, see supra note 3, it would not have been allowable.

Yet the district court ruled as well that appellants' right to recover the civil penalty had been forfeited irretrievably — after the bankruptcy court rejected the LaRoche motion to reaffirm — due to either (i) their deliberate refusal to intervene in the reaffirmation proceeding for the purpose of submitting a motion to amend the bankruptcy court order disallowing the reaffirmation, but see supra note 1, and/or (ii) their failure to commence an adversary proceeding to obtain a judicial determination that the contingent civil penalty asserted against LaRoche was nondischargeable under Bankruptcy

17

Code § 523(a)(7). These district court rulings constituted reversible error.

A creditor intent on establishing that its claim is excepted from discharge, i.e., nondischargeable under Bankruptcy Code § 523(a)(2), (4), (6) or (15), must commence a timely adversary proceeding to determine dischargeability vel non; otherwise, the nondischargeability issue is deemed waived. See 11 U.S.C. § 523(c)(1) (prescribing that creditor asserting nondischargeability, under Bankruptcy Code § 523(a)(2), (4), (6) or (15), must litigate issue in bankruptcy court, or else the "debtor shall be discharged from [the] debt"); In re Walker, 195 B.R. 187, 190 n.3, 195 (Bankr. D.N.H. 1996); 4 Collier on Bankruptcy ¶ 523.26, at 523-11.

On the other hand, creditors relying upon any of the twelve other exceptions to discharge prescribed in Bankruptcy Code § 523(a), including subsection 523(a)(7), may seek a nondischargeability determination in the bankruptcy court, but are not required to do so. See In re Walker, 195 B.R. at 195; Fed. R. Bankr. P. 4007(a) ("A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt."). Thus, bankruptcy courts and nonbankruptcy courts alike are vested with concurrent jurisdiction over nondischargeability proceedings arising under Bankruptcy Code §

18

523(a)(7). Consequently, at their option, creditors seeking a nondischargeability determination need not submit to the jurisdiction of the bankruptcy court, but instead may invoke the jurisdiction of any appropriate nonbankruptcy forum either before or after the bankruptcy proceeding has been closed. See, e.g., In re Walker, 195 B.R. at 203-04; Royal Am. Oil & Gas Co. v. Szafranski (In re Szafranski), 147 B.R. 976, 981 (Bankr. N.D. Okla. 1992); Fed. R. Bankr. P. 4007(b) ("A complaint other than under § 523(c) may be filed at any time.")[5]

At the time the bankruptcy court disallowed LaRoche's motion to reaffirm the indebtedness relating to the "shortfall amount," the most extensive conceivable scope of its ruling would have been that any attempt to reaffirm the indebtedness for the "shortfall amount" — the one and only issue LaRoche was contractually obligated to raise — was a nullity. Thus, the bankruptcy court ruling stands only for the proposition that the reaffirmation effort undertaken by LaRoche did not render the "shortfall amount" indebtedness de facto "nondischargeable." See In re Ripple, 242 B.R. at 64 (noting that where reaffirmation agreement meets rigorous § 524 requirements,

_____

[5]Assuming arguendo that LaRoche might have opted to "remove" the case from the nonbankruptcy forum to the bankruptcy court, see In re Galbreath, 83 B.R. at 551, he did not elect to do so.

19

creditor may recover reaffirmed debt as though debtor never filed bankruptcy petition).

As appellants correctly point out, the bankruptcy court ruling which disallowed the motion to reaffirm filed by LaRoche never purported to resolve the altogether distinct matter relating to the dischargeability of the contingent civil penalty under Bankruptcy Code § 523(a)(7). And since LaRoche commenced no adversary proceeding relating to the dischargeability of the contingent civil penalty, appellants were free to forego their own adversary proceeding. Consequently, their decision not to intervene, notwithstanding the bankruptcy court's invitation, did not forfeit their right to litigate the subsection 523(a)(7) nondischargeability issue at some later date in an appropriate nonbankruptcy forum, viz., the United States District Court for the District of Rhode Island, which had retained jurisdiction for the purpose of monitoring the implementation of the CWA/RIWPCA consent decree.

Accordingly, at the present juncture this appeal reduces to two principal issues: (i) whether the CWA/RIWPCA consent decree constituted either a binding contractual agreement between the parties or a controlling judicial determination — in or by a nonbankruptcy forum possessing concurrent jurisdiction — that the contingent civil penalty

20

imposed upon LaRoche is nondischargeable under Bankruptcy Code § 523(a)(7); and (ii) if not, whether the district court ruling that the civil penalty is dischargeable should be affirmed on other grounds apparent from the record on appeal, see Spenlinhauer v. O'Donnell, 261 F.3d 113, 117 (1st Cir. 2001), or, (iii) whether the record on appeal is sufficiently developed to enable a de novo determination by this court, as to whether appellants are entitled to assert their claim to a nondischargeability exception under subsection 523(a)(7), see Warfel, 268 B.R. at 209, thereby obviating a remand.

The CWA/RIWPCA consent decree unambiguously expunged whatever prospective legal entitlement LaRoche may have had to receive a discharge from the civil penalty.[6] To be sure, on rare occasions courts have either declined on public policy grounds to enforce prebankruptcy waivers of a discharge in bankruptcy, or have ruled that prebankruptcy waivers must strictly comport with the reaffirmation requirements prescribed by Bankruptcy Code § 524(c). See, e.g., Hayhoe v. Cole (In re Cole), 226 B.R. 647, 652-53 (B.A.P. 9th Cir. 1998); In re Mascoll, 246 B.R. at

---

[6]A consent decree is a hybrid, consisting of a contractual agreement among the parties to the dispute, as well as a judicial imprimitur enforceable through the contempt power. See Martin v. Wilks, 490 U.S. 755, 788 n.27 (1989). In all events, the question as to whether LaRoche waived any contention relating to the dischargeability of the civil penalty poses a legal issue subject to de novo review. See id.

21

700-01; <u>In re James</u>, 120 B.R. 582, 585-86 (Bankr. W.D. Okla. 1990); <u>In re Hirte</u>, 71 B.R. 249, 250 (Bankr. D. Ore. 1986); <u>cf. In re Catron</u>, 186 B.R. 194, 196 (Bankr. E.D. Va. 1995) (extending same rule to postpetition waiver of discharge obtained in nonbankruptcy forum, such as state court).

Nevertheless, these decisions invariably involved the four "waivable" exceptions to discharge identified in Bankruptcy Code § 523(a)(2), (4), (6), and (15), <u>over which the bankruptcy court exercises exclusive jurisdiction</u>. See <u>In re Cole</u>, 226 B.R. at 649, 653, 656 (explicitly justifying its holding on ground that "bankruptcy courts have exclusive jurisdiction to determine the dischargeability of claims arising under § 523(a)(2)," and refusing to accord collateral estoppel effect to stipulated judgment because state court which entered it clearly lacked jurisdiction to determine underlying facts necessary to resolve § 523(a) issue); <u>In re Mascoll</u>, 246 B.R. at 701, 706 (§ 523(a)(2)); <u>In re James</u>, 120 B.R. at 584 (§ 523(a)(2)); <u>In re Hirte</u>, 71 B.R. at 250 (noting that claimant's nondischargeability complaint was time-barred by § 523(c)).[7]

---

[7]Since the present case involved no waiver of the general discharge, Bankruptcy Code § 727(10) — which requires that the debtor obtain the bankruptcy court's approval to waive a general discharge during the bankruptcy proceeding, <u>see</u> 11 U.S.C. § 727(10) — is inapposite.

22

Where an asserted exception to discharge relies upon none of the four waivable exceptions to discharge, however, the jurisdiction of the bankruptcy court is concurrent, hence nonexclusive. And since any creditor may opt to litigate, in an appropriate nonbankruptcy forum, its asserted entitlement to an exception from discharge, a debtor's voluntary waiver of objection to such a dischargeability exception in a nonbankruptcy forum would appear to offend no established policy fostered by the Bankruptcy Code. See Saler v. Saler (In re Saler), 205 B.R. 737, 746-47 (Bankr. E.D. Pa. 1997) (holding that debtor's earlier settlement of nondischargeability litigation of § 523(a)(5) exemption did not constitute "reaffirmation"; consequently, § 524(c), by its terms, held inapplicable), aff'd, 217 B.R. 166 (E.D. Pa. 1998); see also Pope v. Wagner (In re Pope), 209 B.R. 1015, 1019 (Bankr. N.D. Ga. 1997); cf. In re Cole, 226 B.R. at 652 (distinguishing Saler on this ground).[8] Thus, we can discern no sound reason that LaRoche, like any other litigant who knowingly and voluntarily

---

[8]The Saler court aptly noted that even if the provisions of § 523(a) were not so plain, Congress was then considering an amendment to § 524(c), which would explicitly permit debtors to enter into prepetition settlements of these nondischargeability claims; the Saler court also cited relevant legislative history relating to the current version of § 524(c), suggesting the same congressional intent. See In re Saler, 205 B.R. at 747-48 (citing 9 Bankruptcy Law Reptr. (BNA), No. 5, 124, at 139 (Jan. 30, 1997)).

23

stipulates to judgment, should not be bound by the obligations undertaken in the consent decree, which obligations plainly constituted the consideration that prompted appellants to settle their nondischargeability action against him.[9]

Furthermore, even assuming LaRoche may have realized some perceived advantage had he litigated the nondischargeability issue in the bankruptcy court, presumably he was free in 1991 either to "remove" the nondischargeability action to the bankruptcy court, see supra note 5, or to commence an adversary proceeding for a declaratory judgment that the debt did not qualify for subsection 523(a)(7) treatment, see Fed. R. Bankr. 4007(a). Nevertheless, LaRoche did neither, preferring instead to wait six years before complying with his promise to provide the "expeditious" and good faith reaffirmation agreement required under the 1991 consent decree. Cf. Richardson v. Chrysler First Fin. Servs. Corp. (In re Richardson), 102 B.R. 254, 256 (Bankr. M.D. Fla. 1989) (determining that though reaffirmation agreement was unenforceable under § 524(c), debtor

---

[9]For present purposes, we need not determine whether LaRoche was either contractually bound or judicially estopped, e.g., by res judicata, collateral estoppel, or the "law of the case" doctrine. See, e.g., In re Saler, 205 B.R. at 744 n.5 (noting that earlier consent decree, whose terms were sufficiently detailed, may have been entitled to collateral estoppel effect, thereby barring litigation of factual matters in subsequent nondischargeability litigation).

was estopped from asserting unenforceability where creditor reasonably refrained from filing timely § 523(a)(2) adversary proceeding in reliance on debtor's earlier waiver).

Accordingly, in the present circumstances we need not consider whether appellants may have been entitled to a nondischargeability determination with regard to the civil penalty under Bankruptcy Code § 523(a)(7), nor whether any such civil penalty qualified for a nondischargeability exception as "compensation for actual pecuniary loss" sustained by appellants. Consequently, we announce no sweeping rule of law regarding the validity of prepetition waivers of discharge, especially since these matters are almost invariably best assessed on a case-by-case basis. Instead, we conclude that because the district court plainly possessed concurrent jurisdiction over the subsection 523(a)(7) dischargeability issue in 1991, when it approved the consent decree, LaRoche cannot now be heard to contend that the general discharge he was granted in 1995 relieved him of liability for the civil penalty.

**Accordingly, the district court judgment is vacated and the case is remanded for the entry of judgment for appellants; costs to be borne by appellees.**

**SO ORDERED.**