EASTERBROOK, Circuit Judge.
 

 James Towers took advantage of people in financial distress. Through his firm Update Financial Services Corp. Towers charged a fee for new financing that would stave off impending foreclosures on home mortgages. Towers promised the homeowners that part of the application fee, and all funds that the homeowners had been required to put into an escrow account, would be returned if refinancing could not be arranged. But he did not keep that promise, and the State of Illinois alleged in an action commenced in 1986 under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 to 505/12, that he never intended to honor his word. Towers defaulted in the state proceeding and did not appear for a prove-up of damages; the state court found in 1991 that Towers had defrauded his customers and imposed a civil penalty of $50,000, ordered Towers to reimburse the state for investigative costs of $50,000, and directed him to pay about $210,000 as restitution. The order included a list of Tower’s customers with amounts due to each.
 

 Towers has had financial problems of his own. He filed a petition in bankruptcy and in 1987 received a discharge under Chapter 7. In 1995 Towers filed a second Chapter 7 petition and received a second discharge. But Illinois asked the bankruptcy court to declare that neither discharge reheves Towers of his obligation to repay his victims in the refinancing scheme. The statutory exception to discharge for money obtained by fraud, see 11 U.S.C. § 523(a)(2)(A), offers no benefit to Illinois because § 523(c) requires claims based on § 523(a)(2) to be made in the bankruptcy itself, which was not done. See also Fed. R. Bankr.P. 4007(e) (when § 523(c) applies, creditors who want an exception to discharge must present their claims no later than 60 days after the first creditors’ meeting). Likewise the state forfeited any argument that the debt stemmed from “larceny” and therefore was nondischargeable under § 523(a)(4). But § 523(a)(7) precludes discharge of fines, penalties, and forfeitures. Claims based on this exception may be raised “at any time.” Fed. R. Bankr. P. 4007(b). Debts covered by this subsection thus pass through bankruptcy unaffected; the creditor may disregard the proceedings and enforce its rights later, as Illinois has sought to do. But to prevail under § 523(a)(7) the creditor must show that the debt is “a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss”. Bankruptcy Judge Ginsberg concluded that the $50,000 civil penalty is not dischargeable under this language, but that the $50,000 debt for investigative costs has been discharged. These conclusions are no longer in controversy. What remains to be determined is the status of the $210,000 in restitution to the victims of Towers’ scam.
 

 Judge Ginsberg recognized that
 
 Kelly v. Robinson,
 
 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), treats restitution ordered in a criminal case as a “penalty ... payable to and for the benefit of a governmental unit” but concluded that the meaning of § 523(a)(7) changed when, in 1994, Congress added § 523(a)(13) to the Bankruptcy Code. The new subsection exempts from discharge “any payment of an order of restitution issued under title 18, United States Code”. Applying the canon
 
 expressio unius est exclusio alteñus,
 
 the bankruptcy judge
 
 *954
 
 concluded that because the state’s restitution order was not issued under title 18 (the criminal title of the Code) it therefore was subject to discharge. On appeal the district judge found this approach unpersuasive, 217 B.R. 1008 (N.D.Ill.1998), as do we. A statute enacted in 1994 could not alter the effect of a discharge in 1987.
 
 Plaut v. Spendthrift Farm, Inc.,
 
 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). But even had § 523(a)(13) been added to the Bankruptcy Code after
 
 Kelly
 
 (but before Towers’ discharge in 1987) it would not have supported the bankruptcy judge’s conclusion. Section 523(a)(7) has not been amended. Canons that assist in revealing the meaning of § 523(a)(13) do not imply that a different subsection suddenly acquired a new meaning while its text was unaltered. If Congress wants to supersede the Supreme Court’s decisions, it must amend the statute the Court has construed; continuity of text equals continuity of meaning.
 
 Pierce v. Underwood,
 
 487 U.S. 552, 566-68, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988);
 
 Illinois Council on Long Term Care, Inc. v. Shalala,
 
 143 F.3d 1072, 1075-76 (7th Cir.1998).
 

 The bankruptcy judge’s unstated premise must have been that different parts of the Bankruptcy Code do not address the same subject (or the same economic transactions), so that if a given subsection does not protect a creditor from discharge, then no other subsection does so. That’s an implausible view of the legislative process. Different provisions added at different times may intersect, and courts endeavor to prevent overlap from causing accidental destruction. Section 523(a)(13) makes double sure that restitution awarded as part of a federal criminal judgment cannot be discharged in bankruptcy but does not imply, for example, that civil fraud judgments that
 
 might
 
 have been made the object of criminal restitution, but weren’t, now may be discharged despite § 523(a)(2)(A). And if § 523(a)(13) does not alter the scope of the fraud exception to discharge, or the larceny exception in § 523(a)(4), it does not contract the scope of § 523(a)(7) either. Congress had good reason to put restitution in federal criminal cases beyond the scope of debate by adding § 523(a)(13). The principal interpretive tool used in
 
 Kelly
 
 — the proposition that courts are “reluctant to interpret federal bankruptcy statutes to remit state criminal judgments” (479 U.S. at 44, 107 S.Ct. 353)—does not apply to federal prosecutions. Read without the aid of this doctrine of federalism, § 523(a)(7) offers weak support for exempting restitution orders from discharge, for it does not mention restitution, and it operates only if the penalty is “for the benefit of a governmental unit”—a condition not easy to satisfy when the governmental body is collecting for private creditors. These limitations on the scope of § 523(a)(13) not only give § 523(a)(13) an independent role to play but also come back to haunt Illinois in this case, as we shall see.
 

 After concluding that § 523(a)(13) does not affect the interpretation of § 523(a)(7), the district court had to determine whether the restitution order meets the criteria of § 523(a)(7).
 
 Kelly
 
 dealt with a criminal restitution order, and as we have mentioned its animating concern was limited to criminal cases. Nonetheless,
 
 Pennsylvania Department of Public Welfare v. Davenport,
 
 495 U.S. 552, 562, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), implies in dictum that
 
 Kelly
 
 is applicable to civil restitution orders.
 
 (Davenport
 
 held that restitution orders are not exempt from discharge under Chapter 13 of the Bankruptcy Code, a conclusion speedily undone by the enactment of 11 U.S.C. § 1328(a)(3), but without affecting one way or the other the status of the dictum.)
 
 Department of Housing & Urban Development v. Cost Control Marketing & Sales Management of Virginia, Inc.,
 
 64 F.3d 920, 927-28 (4th Cir.1995)
 
 (ccmv),
 
 concludes from the combination of
 
 Kelly’s
 
 holding and
 
 Davenport’s
 
 dictum that federal civil restitution orders designed as sanctions for wrongdoing may meet the requirements of § 523(a)(7). Following
 
 ccmv,
 
 the district judge concluded that Towers’ restitution obligation likewise is exempt from discharge.
 

 To see whether this is sound, we must work through the language of § 523(a)(7). There are three requirements. The debt must reflect:
 

 • “a fine, penalty, or forfeiture”
 

 
 *955
 
 • “payable to and for the benefit of a governmental unit”
 

 • that is “not compensation for actual pecuniary loss”
 

 It is easy enough to call restitution under the Illinois Consumer Fraud and Deceptive Business Practices Act “a fine, penalty, or forfeiture”. The state enforces its laws for the benefit of all citizens, not just the victims of a given flimflam. The $50,000 penalty unquestionably satisfies § 523(a)(7); if instead of ordering restitution the state court had selected a “penalty” of $260,000 (the harm caused by the wrongful acts, plus an additional fine), this larger sum also would have been covered. Breaking an exaction into components does not make it less a fine, penalty, or forfeiture.
 

 As for the third requirement, restitution is “compensation for actual pecuniary loss” from the perspective of the victim, who is made whole by the award. But, as
 
 Kelly
 
 observed, restitution usually is not compensation for
 
 the government’s
 
 pecuniary loss. Governments seek restitution to promote law enforcement by deterrence as well as by compensation, and Illinois was not a victim of Towers’ fraud except to the extent criminal activity induced the state to expend part of its law-enforcement budget. The bankruptcy judge concluded that the $50,000 earmarked to reimburse Illinois for the costs of investigation and prosecution is excluded by this language and therefore dischargeable (but see
 
 In re Zarzynski,
 
 771 F.2d 304 (7th Cir.1985)); the $210,000, however, is “not compensation for actual pecuniary loss”.
 

 But the final requirement — that the amount be “payable to
 
 and for the benefit of
 
 a governmental unit” — is not so readily satisfied. The state court’s order directs Towers to pay the $210,000
 
 to
 
 the Attorney General of Illinois, but
 
 for the benefit of
 
 the victims of his fraud. In
 
 Kelly
 
 the governmental unit kept the restitution, for the state was itself the victim (the crime was welfare fraud). In
 
 ccmv
 
 the Department of Housing and Urban Development collected the restitution and, the fourth circuit stressed, was not under any legal obligation to distribute the money to persons harmed by the defendant’s acts. 64 F.3d at 927. If an agency collects money and deposits it into the state’s (or federal government’s) treasury, the fact that the government has a policy of compensating victims of crimes and civil wrongs does not make the collection less “for the benefit” of the government; so, too, tax collections are for the public benefit even when the government spends money as fast as it comes in.
 

 Illinois contends that it, like the Department of Housing and Urban Development in
 
 ccmv,
 
 has no obligation to pass the money through to the victims. Perhaps this would be so under a beady-eyed reading of the restitution order; the judge did not state in so many words that the Attorney General must redistribute to the victims whatever can be squeezed out of Towers. No one doubts, however, that the Attorney General
 
 mil
 
 distribute the money to the victims; its brief informs us that “the State intends to forward restitution payments to the victims if it succeeds in collecting from Towers” and that “the State is receiving no pecuniary benefit” from this activity. Payment is not wholly gratuitous, either. Section 8 of the state law provides in part:
 

 Any person who has suffered damages as a result of the use or employment of any unlawful practices and submits proof to the satisfaction of the court that he has in fact been damaged, may participate with general creditors in the distribution of the assets to the extent he has sustained out-of-pocket losses. In the case of a partnership or business entity, the receiver shall settle the estate and distribute the assets under the direction of the court.
 

 815 ILCS 505/8. Although the Attorney General may respond that he was not formally appointed as the receiver of Update Financial Services Corp., this language makes it clear that a person who collects money designed to make victims whole must use that money to make them whole “under the direction of the court”; he cannot divert it to other good ends. The state court’s restitution order, which lists victims by name and amount of loss, is the sort of “direction” that leads to a distribution. Surely the Attorney General of Illinois can’t disburse state funds to victims of fraud without legal authorization. The only possible authority to pay
 
 *956
 
 money to Towers’ victims come from the combination of § 8 and the state court’s order; neither suggests that distribution is elective on the Attorney General’s part.
 

 Perhaps one could reply that the state’s benefit need not be pecuniary. Deterrence of fraud is a benefit to all of the state’s citizens. If restitution adds to the punch of the criminal law, then so much the better. Some language in
 
 Kelly
 
 suggests this possibility. But the context in which “benefit”
 
 appears
 
 — “payable
 
 to and
 
 for the benefit of a governmental unit” — implies that the “benefit” in question is the benefit of the money that is “payable to” the governmental unit. In
 
 Kelly
 
 the government received and kept the money; not so here. Citizenry at large may get the benefit of deterrence, but neither the people of Illinois nor any governmental unit receives
 
 a financial
 
 benefit from the restitution that Towers has been directed to pay, and the “governmental unit” does not receive any benefit from general deterrence either. Although potential victims gain from improved deterrence, governmental bodies experience the process as a cost — not only the outlay needed to achieve deterrence but also the possibility that, if the level of crime falls, then the budget of those governmental units devoted to crime suppression may decline.
 

 If there were no way to protect the deterrence effects of restitution except by hammering away at “for the benefit of’ until it fit the mold, then a court might be tempted. But it is not necessary. Section 523(a)(2) prevents the discharge of debts attributable to fraud (as Towers’ debts were); § 527(a)(4) exempts debts that stem from embezzlement or larceny; § 523(a)(6) exempts debts that stem from “willful and malicious injury by-the debtor to another entity or to the property of another entity”. These three exemptions cover the gamut of crimes. The only reason Illinois (and Towers’ victims) cannot take advantage of these exclusions from discharge is that they snoozed through his bankruptcies. 11 U.S.C. § 523(c). Instead of asking the bankruptcy court in 1987 to rule that Towers’ obligations to his victims could not be discharged under § 523(a)(2)(A), the state asked only that the bankruptcy court lift the automatic stay so that it could pursue its action in state court. That request was unnecessary; state law-enforcement actions are outside the scope of the stay to begin with. 11 U.S.C. § 362(b)(4). Our point is not that Illinois was
 
 required
 
 to make an argument under § 523(a)(2)(A) in 1987; it is, rather, that the state took its chances by neglecting the proceeding. We do not have to give an acontextual reading to “benefit” in § 523(a)(7) in order to protect victims of fraud; the only real interest that supports the state’s proposed reading of “benefit” is the interest in deferring litigation about dischargeability until after the conclusion of the state-court proceeding. But that’s not a weighty intei-est; to the contrary, by enacting § 523(c) Congress made it clear that the fraud exception to discharge should be litigated in the bankruptcy case. To read “benefit” in § 523(a)(7) the way Illinois prefers would be to undermine the public interest in having claims wrapped up as part of the original bankruptcy case. An approach that simultaneously tortures the language of § 523(a)(7) and undermines the function of § 523(c), in order to protect a creditor that did not take advantage of its opportunities in the original bankruptcy proceeding, has little to recommend it.
 

 Civil restitution under the Illinois Consumer Fraud and Deceptive Business Practices Act is payable to, but not for the benefit of, the Attorney General of Illinois. It is therefore not protected from discharge by 11 U.S.C. § 523(a)(7).
 

 Reversed.