Gerald THOMPSON, Appellant,

v.

Robert HEWITT, Appellee.

No. CIV.A. 03–CV–5937.

United States District Court,
E.D. Pennsylvania.

July 9, 2004.

Gerald E. Thompson, Morrisville, PA, pro se.

David A. Scholl, Newtown Square, PA, for Plaintiff, Appellant and Debtor–in–Possess.

Robert Hewitt, Rio Grande, NJ, pro se.

Bruno Bellucci, III, Law Offices of Bruno Bellucci, III, P.C., Linwood, NJ, for Defendant.

William C. Miller, Philadelphia, PA, pro se.

Frederic J. Baker, Philadelphia, PA, pro se.

### MEMORANDUM

BAYLSON, District Judge.

## I. Procedural History and Jurisdiction

Gerald Thompson ("Debtor" or "Appellant") appeals a final order of the United States Bankruptcy Court for the Eastern District of Pennsylvania, which declared Debtor's restitution obligations non-dischargeable. Debtor's restitution obligations arose out of a criminal prosecution pending in the Superior Court of Cape May County, New Jersey. In a Memorandum and Order dated September 13, 2003 ("the Bankruptcy Order" or "Order"), the United States Bankruptcy Court for the Eastern District of Pennsylvania, per the Honorable Kevin J. Carey ("the Bankruptcy Court"), entered judgment against Debtor and in favor of Robert Hewitt ("Creditor" or "Appellee") in an adversary proceeding initiated by Debtor against Creditor.

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1). The Court held oral argument on June 3, 2004. For the reasons which follow, the decision of the Bankruptcy Court will be affirmed.

## II. Issues Presented on Appeal

Appellant presents the following issues on appeal:

1. Does *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), preclude discharge of an obligation which had not become the subject of a restitution order prior to a Chapter 7 discharge order and which, subsequent to discharge, became the subject of a post-discharge restitution order which—as Appellant admitted and as stipulated to by the parties—was not payable to or for the benefit of a governmental unit and was intended to be compensation for actual pecuniary loss of the non-governmental "victim"?

2. Is *In re Rashid*, 210 F.3d 201 (3d Cir.2000), which holds that restitution is dischargeable if it is not payable for the benefit of a governmental unit and is intended as compensation for actual pecuniary loss of the victim, properly to be interpreted as applying only to federal

restitution orders, when it relies heavily upon and expressly adopts the reasoning of *In re Towers*, 162 F.3d 952 (7th Cir.1998), which addressed state court restitution orders?

## III. Parties' Stipulated Facts

The parties have agreed to the following facts:

1. Debtor commenced a Chapter 13 case on August 27, 2001, at Bankruptcy No. 01–32128 (Bankr. E.D.Pa.) ("the First Bankruptcy Case"), which was converted to a Chapter 7 case on September 25, 2001.

2. Appellee was listed as a creditor in this case and received notice of the filing of and the deadlines in this case.

3. No objection to Debtor's discharge or the dischargeability of his debt to Appellee was ever filed in the First Bankruptcy Case or appears on the First Bankruptcy Case's docket, although Appellee did send a letter to the Chapter 7 Trustee protesting Debtor's discharge of his debt.

4. Although the case known as Indictment No. 01–02–00130–1 ("The NJ Criminal Case"),[1] Superior Court of New Jersey, Cape May County—Criminal Division ("the NJ Court") had been commenced prior to Debtor's discharge in the First Bankruptcy Case, no restitution or other order was entered directing Debtor to pay any sum to Appellee as of the date of Debtor's discharge in the First Bankruptcy Case on February 6, 2002.

5. An Order was entered on April 12, 2002 in the NJ Criminal Case ("the Restitution Order"), which awarded Appellee restitution of $22,785, plus costs, against Debtor, to be paid at $500/month.[2]

6. On September 12, 2002, the NJ Court advised the Bankruptcy Court that it was willing to accept any agreement that Debtor and Appellee reached between them as a resolution of the restitution aspect of the Restitution Order.[3]

7. Appellee agreed to accept payments of not less than $200/month for 12 months and $300/month thereafter in payment of restitution under the Restitution Order, subject only to Debtor's right to continue to contest the dischargeability of the debt owed to him by Appellee, in light of the discharge received by Debtor in the First Bankruptcy Case.

---

**1.** In the NJ Criminal Case, criminal charges were brought against Debtor. Creditor had hired Debtor, a developer of land, to build and sell Creditor a house. Creditor had paid Debtor $56,120 toward the purchase price, and alleged theft by deception when Debtor failed to complete the project to specifications. (R., Ex. 5, ¶¶ 4–6.)

**2.** According to the opinion of the Bankruptcy Court, there is some question whether this amount is paid directly to Appellee. At a July 25, 2002 hearing on a preliminary injunction motion, Appellee stated to the Bankruptcy Court that the Restitution Order required payments to be made to the "probation court" and not directly to him. *Order, supra*, at 3 n. 4.

**3.** Again, according to the Bankruptcy Court this agreed-upon fact might not accurately reflect the actual position of the NJ Court. In its opinion, the Bankruptcy Court noted that, with the parties' consent, it had spoken with the presiding judge in the NJ Court, who indicated that if Debtor and Creditor had reached an agreement regarding payment of the Restitution Order, the NJ Court could be flexible and consider such an agreement in the NJ Criminal Case. *Order, supra*, at 3 n. 4.

8. All of the payments made by Debtor pursuant to the agreement are payable to and for the benefit of Appellee.

9. All of the payments made by Debtor pursuant to the agreement are compensation for actual pecuniary losses claimed by Appellee.

## IV. Opinion of the Bankruptcy Court

The Bankruptcy Court concluded that enforcing the Restitution Order would not violate the discharge injunction of 11 U.S.C. § 524(a)(2), nor would it violate the automatic stay of 11 U.S.C. § 362.

### A. Discharge Injunction of 11 U.S.C. § 524(a)(2)

Section 524(a)(2) reads in pertinent part:

(a) A discharge in a case under this title—

. . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a)(2). In concluding that there would be no violation of the discharge injunction of 11 U.S.C. § 524(a)(2), the Bankruptcy Court ruled that the Supreme Court's decision in *Kelly, supra,* applied to this matter, and excepted from discharge Debtor's obligations under the state court Restitution Order pursuant to

11 U.S.C. § 523(a)(7). Section 523(a)(7) states in pertinent part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . .

(7) to the extent such debt is for a[1] fine, penalty of forfeiture [2] payable to and for the benefit of a governmental unit, and [3] is not compensation for actual pecuniary loss, other than a tax penalty. . . .

11 U.S.C. § 523(a)(7).[4] Even though no one filed an objection to discharge in the First Bankruptcy Case, the Bankruptcy Court concluded that Appellee was not obligated to file an objection to render his Section 523(a)(7) debt non-dischargeable because, as the Bankruptcy Court interpreted *Kelly* and other precedent, Section 523(a)(7) debts are naturally non-dischargeable.

Debtor had requested that the Bankruptcy Court consider the two qualifying phrases in Section 523(a)(7), i.e., whether the restitution obligation is "payable to and for the benefit of a governmental unit," and "not compensation for actual pecuniary loss." Debtor argued that among the parties stipulated facts were stipulations that "[a]ll of the payments made by the Debtor pursuant to this agreement are payable to and for the benefit of the [Creditor]" and "[a]ll of the payments made by the Debtor pursuant to this agreement are compensation for actual pecuniary losses claimed by the [Creditor]." The Bankruptcy Court, citing prec-

---

4. The Court notes that even though Section 523(a)(7) does not mention criminal restitution specifically, the language "has been held to bar discharge in a chapter 7 case of a restitution obligation that is part of a criminal judgment." *Texas v. Riddlespriger,* 2003 Bankr.LEXIS 929, at *4 (Bankr.N.D.Tex. Aug. 13, 2003) (citing *Kelly,* 479 U.S. at 50, 107 S.Ct. 353).

11 U.S.C. § 523(a)(13), which Congress added post-*Kelly,* makes nondischargeable in Chapter 7 any debt "for any payment of an order of restitution under title 18, United States Code." However, as the Restitution Order at issue in this case arises under state law, and not under title 18 (the criminal title of the Code), this language is inapplicable.

edent, noted that stipulations regarding legal issues are not binding on the court, and was not persuaded by Debtor's argument regarding the finality of these stipulations.

The Bankruptcy Court focused instead upon the interests of the state and judicial systems in ordering restitution in criminal cases. Relying heavily on *Kelly's* language regarding "for whose benefit" courts typically impose restitution orders, the Bankruptcy Court concluded that "the State of New Jersey's imposition of restitution obligations on the Debtor is not for the purpose of making [Creditor] whole, but, rather, is part of the criminal sentence imposed by the State for penal and rehabilitative purposes, thereby causing the debt to fall within the § 523(a)(7) exception to discharge." *Order, supra,* at 8. That is, the Bankruptcy Court decided that New Jersey receives the benefits of criminal deterrence and rehabilitation—which, albeit, are not quantifiable monetary benefits—from the continued enforcement of the Restitution Order.

The Bankruptcy Court distinguished *Rashid v. Powel (In re Rashid),* 210 F.3d 201 (3d Cir.2000), having concluded that *Rashid* was limited to federal criminal restitution judgments. In *Rashid,* the Third Circuit held that a restitution obligation imposed under the Victim and Witness Protection Act was not excepted from discharge under Section 523(a)(7), because the money was not payable to a governmental unit, but rather ultimately would be paid to the victims of the crime. Debtor argued that since the money he must pay under the Restitution Order ultimately will be paid to Creditor (regardless if the "probation court" first collects the money, *see supra* note 1), Debtor's debt should qualify for discharge under Section 523(a)(7). However, because the instant case concerns whether a state Restitution Order should be discharged, and because *Rashid* decided whether a federal restitution judgment could be discharged under Section 523(a)(7), the Bankruptcy Court concluded that *Kelly,* which involved a state restitution order, was more applicable and more controlling than *Rashid.* The Bankruptcy Court found that this case implicated federalism concerns similar to those that influenced the Supreme Court in *Kelly. See infra* Part V.A.

## B. Automatic Stay of 11 U.S.C. § 362

Debtor had argued that further prosecution of the Criminal Prosecution to enforce the Restitution Order obligations would violate the automatic stay provision of Sections 362(a)(1), (a)(3), and (a)(6). Debtor also had requested that sanctions be imposed against Creditor, pursuant to Section 362(h), for willfully violating the automatic stay provisions. The Bankruptcy Court found these arguments unpersuasive.

The Bankruptcy Court noted that Creditor is not the party prosecuting the Criminal Prosecution, nor did Creditor violate the automatic stay of Section 362(a) by participating in any proceedings in the Criminal Prosecution to enforce the Restitution Order. The Bankruptcy Court further wrote:

> As [the Bankruptcy Court] concluded in [its] August 13, 2002 Memorandum and Order denying the Debtor's motion seeking a preliminary injunction in this adversary proceeding, Bankruptcy Code § 362(b)(1) expressly excepts the continuation of the state court criminal proceeding from the reach of the automatic stay—even if the criminal proceeding's purpose is to collect a debt or enforce payment of a criminal restitution obligation.

*Order, supra,* at 10. The parties do not appear to dispute this portion of the Bank-

ruptcy Court's ruling, and this Court will not independently review this portion of the Bankruptcy Order absent such dispute.

## V. Discussion

### A. *Kelly v. Robinson*

In *Kelly*, the debtor had pleaded guilty in a Connecticut state court to a larceny charge based on a wrongful receipt of welfare benefits from the Connecticut Department of Income Maintenance. *Kelly*, 479 U.S. at 38–39, 107 S.Ct. 353. The debtor originally received a prison term, but was later placed on probation and subsequently was sentenced to make restitution through monthly payments to the Connecticut Office of Adult Probation. *Id.* at 39, 107 S.Ct. 353. One year later, the debtor filed under Chapter 7 and listed her restitution obligation as a debt. *Id.* The state agencies, although notified, did not file proofs of claim or objections to discharge, and the bankruptcy court subsequently granted the debtor a discharge. *Id.* The district court upheld the bankruptcy court, but the Second Circuit overturned. *Id.* at 41–43, 107 S.Ct. 353.

On review, the Supreme Court concluded that Section 523(a)(7) "preserves from discharge any condition a state criminal court imposes as part of a criminal sentence." *Id.* at 50, 107 S.Ct. 353. The Court primarily couched its opinion in federalism principles, holding that to empower federal bankruptcy courts to discharge state criminal sentences would undermine "[t]he right to formulate and enforce penal sanctions [that] is an important aspect of the sovereignty retained by the States." *Id.* at 47, 107 S.Ct. 353. The Court held that Connecticut's right to object to the debtor's discharge was insufficient to preserve state sovereignty, as this procedure would impose an undue burden on state prosecutors who would then be compelled to defend (or, at worst, relitigate) state

prosecutions before federal bankruptcy courts in order to preserve state convictions. *Id.* at 48, 107 S.Ct. 353. Furthermore, such a procedure potentially could influence state judges to alter their criminal sentences to preserve those rulings from federal review. The Court prophesied that discharges in bankruptcy of state criminal sentences "would hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems." *Id.* at 49, 107 S.Ct. 353.

The Court also concluded that Section 523(a)(7) would not allow the discharge of state restitution orders given that Connecticut derived a benefit in terms of deterrence from the enforcement of the debtor's restitution obligation, in addition to the actual moneys the debtor repaid to the state. The Court emphasized that the criminal justice system serves both Connecticut and "society as a whole." *Id.* at 52, 107 S.Ct. 353. The Court wrote:

> [The criminal justice system] is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant. . . . Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect citizens by enforcing its criminal statutes and to rehabilitate an offender by impos-

ing a criminal sanction intended for that purpose.

. . .

Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather that the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State. Similarly, they are not assessed "for . . . compensation" of the victim. *Id.* at 52–53, 107 S.Ct. 353 (quotation omitted).

### B. *Rashid v. Powel (In re Rashid)*

A federal jury convicted Rashid of fifty-four counts, including mail fraud, wire fraud, and money laundering, stemming from Rashid's operation of a fraudulent commercial loan operation. 210 F.3d at 203. The district court sentenced Rashid to 168 months incarceration, assessed $2,700 in fees, and fined him $15,000. *Id.* The probation office determined that Rashid's fraud cost his victims $1,696,470 and the district court subsequently ordered Rashid to pay criminal restitution in that amount. *Id.*

Rashid filed for Chapter 7 bankruptcy protection and listed among his creditors the victims of his fraud to whom he owed in excess of the $1.6 million. *Id.* After the United States Attorney for the Eastern District of Pennsylvania filed a judgment lien on his property, Rashid filed an adversary proceeding against the United States in Bankruptcy Court alleging primarily that his criminal restitution obligation was dischargeable in bankruptcy. *Id.* The district court disagreed but affirmed, holding that the obligation was statutorily exempt from discharge as a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit." *Id.*

The Third Circuit reversed the district court, finding that Rashid's restitution ob-

ligation was not automatically excepted from discharge. *Id.* at 208. The Third Circuit examined Section 523(a)(7) and determined that the statutory language—in particular, the use of the word "payable"—would indicate that the conferred "benefit" must have some quantifiable and computable monetary value. *Id.* The court concluded that Rashid's obligation to pay restitution to his fraud victims was dischargeable in bankruptcy because it was payable to the benefit of his defrauded victims and not "to and for the benefit" of any governmental unit. *Id.* The record in *Rashid* was ambiguous as to whether the restitution was to be mailed directly to the victims or first to the government for distribution, but neither was found satisfactory to render restitution automatically non-dischargeable. *Id.* The court wrote:

> The word "payable" clearly casts an economic light over the phrase that suggests that the benefit must be conferred from the monetary value of the debt to be paid by the defendant and not the more abstract benefit of criminal deterrence.
>
> . . . Although the record is unclear whether Rashid's restitution obligations were to be directly paid to his victims or were to pass through a governmental unit before reaching the victims, it is clear that the benefit—the money—is ultimately payable to the victims. Accordingly we find that Rashid's restitution obligation is not exempt from discharge pursuant to § 523(a)(7).

*Id.* at 208 (citation omitted). Where the state collects moneys from a citizen for redistribution to private citizens, it becomes difficult to prove whether the debt is payable to and for the benefit of a governmental unit, even where the moneys pass through a government account. *Id.* at 207–08.

## C. Contentions of Appellant

Appellant contends that the obligation in question was a routine debt that was discharged before it became the subject of the Restitution Order, because its discharge went unchallenged by Appellee. Thus, according to Appellant, the Bankruptcy Court erred in concluding that the obligation in question was a Section 523(a)(7) debt automatically non-dischargeable pursuant to *Kelly*. Appellant further contends that even under the *Kelly* test, the obligation in question is dischargeable because the debt is not "payable to and for the benefit of a governmental unit," because the debt, argues Appellant, is payable to a private party for actual pecuniary loss.

Appellant rejects the premise that "payable to and for the benefit of a governmental unit" may be satisfied by the more abstract state "benefit" of criminal deterrence that any criminal restitution order provides. In support, Appellant cites the "payable" analysis offered by the Third Circuit in *Rashid*, which held that the word "payable" within Section 523(a)(7) suggests that the government's benefit must be related to the monetary value of the defendant's debt, not merely to the "more abstract benefit" of general criminal deterrence. *Rashid*, 210 F.3d at 208.[5] Appellant then cites several federal bankruptcy court cases from around the country holding that both criminal and civil restitution orders are dischargeable when any requirement of Section 523(a)(7) is not met. *Verola v. Colton (In re Verola)*, 296 B.R. 266 (Bankr.S.D.Fla.2003) (debtor guilty of criminal fraud in state court sentenced to pay restitution to Florida Department of Corrections for distribution to creditors; court held debt dischargeable as not "payable to or for a governmental unit"); *In re McNabb*, 287 B.R. 820 (Bankr.D.Colo.2003) (debtor sentenced to pay restitution directly to crime victims by state court; debts ruled dischargeable as not payable to or for governmental unit and as compensation for actual pecuniary loss); *In re Kish*, 238 B.R. 271 (Bankr.D.N.J.1999) (civil judgment against debtor for surcharges, payable to New Jersey Department of Motor Vehicles to be funneled to private creditors, arising from violation of state motor vehicle laws dischargeable as not "for the benefit of a governmental unit"); *In re Bailey*, 202 B.R. 317 (Bankr.D.N.M.1995) (civil judgment awarded to individual officers at state university dischargeable as individuals did not constitute a governmental unit); *In re Wood*, 167 B.R. 83 (Bankr.W.D.Tex. 1994) (Rule 11 sanctions imposed by and payable to State Court for disbursal to private party dischargeable as not payable to or for a governmental unit); *In re Strutz*, 154 B.R. 508 (Bankr.N.D.Ind.1993) (court costs awarded against debtor dischargeable as not payable to a governmental unit). Appellant concludes that because the debt is payable to a private person for actual pecuniary loss, the obligation should not have been rendered non-dischargeable.

Appellant finally contends that the Bankruptcy Court erred in distinguishing *Rashid* based on a federal/state dichotomy. Appellant reasons that because the court

---

**5.** Appellant's contention is strengthened by the fact that *Kelly* is not necessarily inconsistent with the "payable" analysis. The restitution payments made by the defendant in *Kelly* went directly to the Connecticut Office of Adult Probation to reimburse the state for fraudulently received welfare funds. *Kelly,* 479 U.S. at 38–39, 107 S.Ct. 353. Thus the restitution payments almost certainly created a governmental benefit more closely related to the monetary value of the defendant's debt than to a more abstract benefit of criminal deterrence.

in *Rashid* borrowed much of its holding directly from *Towers, supra,* which involved a state court restitution order,[6] the holding of the Bankruptcy Court, that *Rashid* only applies to federal restitution orders, is erroneous.

## D. Contentions of Appellee

Appellee contends that the Bankruptcy Court correctly applied *Kelly* as controlling authority in ruling that, per *Kelly,* any condition a state criminal court imposes as part of a criminal sentence in non-dischargeable under 11 U.S.C. § 523(a)(7). Thus restitution obligations imposed by state criminal courts are not dischargeable, and to consider Debtor's obligation to Creditor a routine debt eligible for discharge would neglect New Jersey's non-monetary interests in imposing restitution in criminal cases. Appellee urges this Court not to forget that even though the criminal justice system operates partially to benefit the victims of crimes, society has its own interests in punishing and rehabilitating offenders.

Appellee next contends that neither of the two qualifying conditions to the broad exception from discharge outlined in Section 523(a)(7) is applicable to the instant case. The restitution obligation can be considered both "to and for the benefit of a governmental unit," and "not compensation for actual pecuniary loss." Appellee cites the Supreme Court's reasoning in *Kelly,* that the use of restitution as a sentencing option naturally benefits the state. Appellee contends that—in terms of general deterrence, specific deterrence, and

Debtor's furthered rehabilitation—New Jersey benefits from the imposition and continuation of Debtor's obligation. Furthermore, while restitution is forwarded to the victim and may be calculated by reference to the amount of harm the offender has caused, the context in which restitution is imposed undermines the conclusion that restitution serves as a judgment based on actual pecuniary loss.

Appellee concludes by contending that the bankruptcy court properly limited the holding of *Rashid* to federal criminal restitution judgments. The federalism concerns that the Supreme Court found compelling in *Kelly,* namely, that federal bankruptcy courts should not upset restitution orders imposed by state criminal courts to affect state rehabilitative policies, are not present when assessing federal restitution orders.

## E. Analysis

█ Appellant argues that the obligation in question was not payable "to and for the benefit of a governmental unit," under the *Rashid* "payable" analysis, and thus Section 523(a)(7) does not act as a bar to discharge. Though, where New Jersey has been collecting money from Debtor before apparently redistributing it to Creditor pursuant to the Restitution Order, *see supra* note 1, whether the "payable" analysis properly applies is not entirely clear based on precedent. The Third Circuit has not addressed whether the "payable" analysis should apply when debts collected pursuant to state restitu-

6. An Illinois state court found the defendant, James Towers, to have defrauded his customers and imposed a civil penalty of $50,000 along with approximately $210,000 in restitution based on the losses of his victims and payable to his victims. In assessing the dischargeability of the restitution order, the district judge concluded that civil restitution orders designed as sanctions for wrongdoing were non-dischargeable. The Seventh Circuit reversed, holding that the restitution order in question would be distributed to the victims, and thus was not "payable to and for the benefit of a governmental unit." *Towers,* 162 F.3d at 953–955.

tion orders are later redistributed to private creditors.[7]

The District Court for the District of New Jersey, however, adopted the "payable" analysis in *Legreide v. Pulley (In re Pulley)*, 303 B.R. 81 (D.N.J.2003), which discharged motor vehicle surcharges levied against the debtor by the New Jersey Division of Motor Vehicles. That court wrote:

> The surcharges at issue here are first collected by the [Division of Motor Vehicles], not the Department of the Treasury. The money is then deposited into the [Market Transition Facility] Revenue Fund, and is dedicated to servicing the financial obligations of the [Market Transition Facility]. The funds are then used to repay investors, whether private or public, before any surplus reaches the Department of the Treasury. The fact that funds pass through a government is irrelevant here; the State is collecting the debt for service of the [Market Transition Facility] debt and redistribution to private creditors.

303 B.R. at 89. The application of *Pulley* to the instant case is questionable, however, as *Pulley* dealt with a state's imposition of civil, as opposed to criminal, penalties. Thus the federalism and sovereignty concerns at the crux of *Kelly*, specifically the prospect of federal courts invalidating state criminal sentences, were not pressing in *Pulley*.

The applicability of the "payable" analysis to state criminal restitution orders remains an unsettled question nationally. Appellant cites several bankruptcy cases that follow the *Towers* "payable" analysis. *See supra* Part V.C. But Appellant fails to note that other bankruptcy courts outside the Third Circuit have followed *Kelly*, and distinguished *Rashid* as applicable only to federal restitution orders. Those courts have rejected the "payable" analysis in finding state criminal restitution orders to be non-dischargeable either because states derive some deterrent "benefit" from the enforcement of their restitution orders, or on the grounds of preserving state sovereignty, or because of both. *E.g., Warfel v. City of Saratoga (In re Warfel)*, 268 B.R. 205, 212 (9th Cir. BAP 2001) (state criminal judgments involving restitution should enjoy a higher level of deference from federal courts because to discharge these restitution orders would be "abhorrent to the standards of federalism"); *Farmers Ins. Exch. v. Mills (In re Mills)*, 290 B.R. 822 (Bankr.D.Colo.2003) (state criminal restitution orders are non-dischargeable even when owed directly to private entity; payments specifically imposed by the court to further a state's interest in deterrence and rehabilitation are, in effect, "payable to and for the benefit" of state); *In re Byrd*, 256 B.R. 246, 255–56 (Bankr. E.D.N.C.2000) (criminal restitution non-dischargeable as states have the right to use restitution as a deterrent and to incorporate restitution into sentencing options).

In light of the Supreme Court's opinion in *Kelly*, with facts and posture roughly

---

7. Although in *United States v. Christopher*, 273 F.3d 294 (3d Cir.2001), an abatement case with little factual applicability to this matter, the Third Circuit suggested it did not consider *Rashid* inconsistent with *Kelly:*

> The Supreme Court has noted that the Bankruptcy Code was not intended to grant a discharge from criminal fines and penalties and held that, being criminal in nature, a restitution order was not subject to dis-

charge. *Kelly v. Robinson*, 479 U.S. 36, 46–49, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Although restitution is designed for the benefit of the victim, he has no control over the amount to be awarded, nor whether it will be directed. We followed *Kelly* in another bankruptcy discharge case. *In re Rashid*, 210 F.3d 201 (3d Cir.2000).

273 F.3d at 298.

similar to this case, and in light of the lack of more definitive precedent indicating a shift in how these circumstances are to be judicially resolved, this Court will affirm the judgment of the Bankruptcy Court. The Supreme Court in *Kelly* found the concerns of federalism to be compelling. *Kelly*, 479 U.S. at 47, 107 S.Ct. 353. The Supreme Court noted that state criminal courts may choose to reduce or forgo prison sentences conditioned on a defendant's payment of restitution to the victim. *Id.* at 48–49, 107 S.Ct. 353. Allowing restitution to be discharged under these circumstances would thus constitute a federal remission of judgments imposed by state criminal courts. *Id.* at 49, 107 S.Ct. 353. This disturbing prospect could hamper the ability of state criminal judges to choose the sentencing combination best designed to further the state's goals of rehabilitation and deterrence, a prospect the Supreme Court strongly suggested Congress did not intend. *Id.* The NJ Court presumably imposed restitution after weighing the state's interests in criminal deterrence and rehabilitation. The NJ Court would not have chosen the particular sentence given were the sentence not designed to further those goals. It seems similarly likely that the NJ Court would have sentenced differently had it envisioned the debt obligation as dischargeable in bankruptcy. Rendering the debt dischargeable in the instant case would cause the exact federal interference with state sentencing goals the Supreme Court warned of in its *Kelly* holding.

*Rashid* arose in a federal context, thus the Third Circuit had no reason to consider the prerogative of a state criminal court to use restitution freely in sentencing as a criminal deterrent and rehabilitative tool without interference from federal bankruptcy courts. The Third Circuit may well have been influenced to some extent by the "payable" analysis of the Seventh Circuit's decision in *Towers*, which held a

state criminal restitution order dischargeable. To date, though, the Third Circuit has applied this "payable" analysis only to federal criminal restitution (and then only in *Rashid*), and has held neither that the "payable" analysis outweighs the concerns of federalism present in state criminal restitution orders, nor that the "payable" analysis should be applied in those situations. Absent a more definitive holding from the Third Circuit applying the "payable" analysis to state court criminal restitution orders, this Court concludes that the Bankruptcy Court was correct to distinguish *Rashid* as applicable only to federal orders. The Bankruptcy Court was correspondingly correct to conclude that the debt in question was rendered non-dischargeable by Section 523(a)(7).

The restitution in question is not compensation for actual pecuniary loss. The Supreme Court has stated specifically that although restitution can resemble a judgment for the victim, the "criminal justice system is not operated primarily for the benefit of the victim, but for the benefit of society as a whole." *Kelly*, 479 U.S. at 52, 107 S.Ct. 353. Further evidence of this is found in the victim's lack of control over the amount of restitution ordered, or over the decision to award restitution at all. *Id.; see also Kish*, 238 B.R. at 285 ("[E]ven if a penalty is based in part on measurable pecuniary loss, it will not be deemed compensation for such loss under 523(a)(7) if its primary purpose is penal.").

■ Finally, Appellant's contention that the debt had been discharged prior to becoming the subject of a restitution order is unpersuasive. Once the restitution order was enacted by the NJ Court, its dischargeability is subject to the requirements of Section 523(a)(7), which renders court-imposed criminal restitution non-dischargeable. The previous history between

the parties regarding the amount in question is irrelevant. Although the Supreme Court has noted that restitution does differ from traditional fines in that restitution is forwarded to the victim, it has held that, "[t]he decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the defendant's situation." *Kelly*, 479 U.S. at 50–53, 107 S.Ct. 353.

## VI. Conclusion

In light of the federalism and sovereignty concerns at the crux of *Kelly*, and absent a more definitive holding from the Third Circuit compelling the application of the "payable" analysis to state criminal restitution orders, the Bankruptcy Court was correct to distinguish the Third Circuit's holding in *Rashid* as applicable only to federal restitution orders, and correspondingly correct in finding the criminal restitution orders imposed by the NJ Court non-dischargeable in bankruptcy under Section 523(a)(7).

An appropriate order follows.

### *ORDER*

AND NOW, this 9th day of July, 2004, after a review of this appeal of a final decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania, IT IS ORDERED that the decision of the Bankruptcy Court is AFFIRMED.