# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

In re: JASON DEREK TROFF,

     Debtor,

————————————————

JASON DEREK TROFF,

     Plaintiff-Appellant,

   v.

STATE OF UTAH, RICHARD ELLIS,
in his official capacity as Executive
Director of the Utah Department of
Administrative Services; and DAVID
JOHNSON III, in his official capacity
as Interim Director of the Office of
State Debt Collection,

     Defendants-Appellees.

No. 05-4244

---

## ORDER ON REHEARING

---

Before **HENRY, McWILLIAMS, TYMKOVICH**, Circuit Judges.

---

    Jason Derek Troff has filed a petition for panel rehearing, in part, to clarify factual statements in In Re Troff, 479 F.3d 1213 (10th Cir. 2007), concerning the amount of damage his arson caused. Specifically, Mr. Troff observes that the record does not support the $800,000 figure, and he asks that we omit it.

Upon consideration, the court grants the petition for rehearing for the limited purpose of excluding the $800,000 figure. The petition is denied in all other respects. An amended opinion is attached to this order.

Entered for the Court,


Robert Henry
Circuit Judge

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 15, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

In re: JASON DEREK TROFF,

Debtor.

_____

JASON DEREK TROFF,

Plaintiff-Appellant,

v.

STATE OF UTAH, RICHARD ELLIS,
in his official capacity as Executive
Director of the Utah Department of
Administrative Services; and DAVID
JOHNSON III, in his official capacity
as Interim Director of the Office of
State Debt Collection,

Defendants-Appellees.

No. 05-4244

**Appeal from the United States District Court for the District of Utah**
**(D.C. No. 2:05-cv-382 BSJ)**

Michael F. Thomson, Durham Jones & Pinegar, Salt Lake City, Utah, for
Plaintiff-Appellant.

Nancy L. Kemp (Mark L. Shurtleff with her on the brief), Utah Assistant Attorney
General, Salt Lake City, Utah, Attorneys for Defendants-Appellees.

Before **HENRY, McWILLIAMS**, and **TYMKOVICH**, Circuit Judges.

**HENRY,** Circuit Judge.

This appeal raises the question of whether 11 U.S.C. § 523(a)(7) permits a debtor in a Chapter 7 bankruptcy proceeding to discharge a restitution obligation imposed as part of a state criminal sentence and payable to a private individual. Exercising jurisdiction pursuant to 28 U.S.C. § 158(a) and (d), we affirm the district court and hold that the debt is not dischargeable.

## I. Background

In August of 1997, Jason Troff pleaded guilty to arson for setting fire to a McDonald's in Salt Lake City, Utah. The Utah Third District Court stayed a prison sentence of fifteen years, placed Mr. Troff on 36 months' probation, and ordered him to pay $239,696 of restitution at a rate of $100 per month as a condition of his probation. Throughout his probation, Mr. Troff made the monthly payments to the state, and the state forwarded the funds to the victim. In October of 2000, probation violations prompted the court to extend his probation an additional 36 months. As with his initial sentence, payment of restitution remained an express condition of Mr. Troff's probation.

Upon completion of probation, Mr. Troff's restitution obligation was converted to a civil judgment. He continued making restitution payments until March of 2003. In May of that year, Mr. Troff filed for bankruptcy under Chapter 7, and the bankruptcy court discharged his restitution obligation. At the time he

2

filed for bankruptcy, Mr. Troff had paid only about $8,000 of his $239,696 debt. Utah appealed the bankruptcy court's decision, and the district court held that the restitution obligation was not dischargeable.

## II.  Standard of Review

The sole issue on appeal is whether § 523(a)(7) permits the discharge of a restitution obligation imposed as part of a criminal sentence.  "In reviewing a bankruptcy court decision under 28 U.S.C. § 158(a) and (d), the district court and the court of appeals apply the same standards of review that govern appellate review in other cases." *In re Hodes*, 402 F.3d 1005, 1008 (10th Cir. 2005). Because this case requires us to determine the meaning of 11 U.S.C. § 523(a)(7), we review the district court's decision de novo. *United States v. RX Depot, Inc.*, 438 F.3d 1052, 1054 (10th Cir. 2006) ("We review questions of statutory interpretations de novo.").

## III.  Applicable Law

We begin our analysis with an examination of 11 U.S.C. § 523(a)(7).  For reasons set forth in greater detail below, our analysis does not end with the text. Next, we discuss *Kelly v. Robinson*, a Supreme Court case holding that restitution obligations imposed as part of a criminal sentence are nondischargeable.  479 U.S. 36, 53 (1986).  Finally, we examine Utah's sentencing scheme and Mr. Troff's sentence in light of *Kelly*.  We conclude that the same federalism concerns that gave rise to the Supreme Court's decision in *Kelly* are present in this case,

and they compel us to conclude that, pursuant to § 527(a)(7), Mr. Troff's restitution obligation may not be discharged.

## A. *The Bankruptcy Code*

Section 523(a)(7) states in the pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . .

Mr. Troff contends that the plain meaning of this text requires discharge because the restitution in this case is not "payable to and for the benefit of a governmental unit" because, although Mr. Troff made his monthly payments to the state, the state forwarded them to the victim. Were we to apply a strict plain meaning reading of this statute's text to the instant case, Mr. Troff's argument would be stronger. However, the Supreme Court's decision in *Kelly* makes clear that we must look beyond such a reading to federalism concerns and to the history of this statute.

## B. Kelly v. Robinson

In *Kelly*, the Supreme Court addressed a question almost identical to the one here. Ms. Robinson was convicted of larceny after she wrongfully accepted nearly $10,000 in welfare benefits from the State of Connecticut. 479 U.S. at 38. The sentencing judge ordered Ms. Robinson to make restitution to the state as a

condition of probation. Ms. Robinson subsequently filed for bankruptcy under Chapter 7, and the bankruptcy court discharged her court-imposed restitution obligation. The Supreme Court held that restitution obligations imposed as part of a criminal sentence were not dischargeable under § 523(a)(7) because principles of federalism do not permit a bankruptcy court to interfere with a state criminal sentence. *Id.* at 53.

The first aspect of *Kelly* that bears on our decision in this case is the Supreme Court's method of statutory interpretation. The Court emphasized that in the context of the Bankruptcy Code, "the text is only the starting point[]," and that courts "must consider the language of . . . 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems." *Id.* at 43. Because federal courts had interpreted bankruptcy laws to avoid conflict with state criminal sentencing since the inception of bankruptcy, the Court reasoned that "[i]f Congress had intended, by § 523(a)(7) or by any other provision, to discharge state criminal sentences, we can be certain that there would have been hearings, testimony, and debate concerning consequences so wasteful, so inimical to purposes previously deemed important, and so likely to arouse public outrage." *Id.* at 51 (internal quotation marks omitted).

The *Kelly* Court noted that its decision rested on the same "'fundamental policy against federal interference with state criminal prosecutions'" that was at

the core of the Court's holding in *Younger v. Harris*. *Id.* at 47 (quoting *Younger v. Harris*, 401 U.S. 37, 46 (1971)). In *Younger*, the Court concluded that federal courts could enjoin state criminal prosecutions in only extraordinarily rare circumstances. 401 U.S. at 53-54. Writing for the *Younger* Court, Justice Black explained that state control over criminal justice was a lynchpin in the unique balance of interests he described as "Our Federalism." *Id.* at 44.

> [Federalism] represent[s] a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.*

To avoid conflict with state criminal justice systems, the *Kelly* Court broadly interpreted § 523(a)(7)'s requirement that in order to be non-dischargeable, a "fine, penalty, or forfeiture" must be "payable to and for the benefit of a governmental unit and [] not compensation for actual pecuniary loss." Kelly, 478 U.S. at 52. The Court explained that although restitution often focuses on money owed to a non-governmental victim,

> [t]he criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. . . . Although restitution does resemble a judgment for the benefit of the victim, the context in which it is imposed undermines that conclusion. . . . Unlike an obligation which arises out of a contractual, statutory, or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender . . . .

6

*Id.* (internal quotation marks omitted). Hence, the Court concluded that any restitution obligation imposed as part of a state criminal sentence confers a benefit on a governmental unit. *Id.* at 53.

## IV. Discussion

### A. *Applicability of* Kelly v. Robinson

Mr. Troff contends that we ought to confine *Kelly* to its facts and disregard much of the opinion as dicta. He maintains that, if read narrowly, *Kelly* does not apply here because in Ms. Robinson's case, Connecticut retained Ms. Robinson's restitution payments. Thus, Mr. Troff maintains that the Supreme Court's broad interpretation of "for the benefit of a governmental unit" is not applicable in this case because the payments here are forwarded to the victim.

Mr. Troff's observation that *Kelly's* holding reaches beyond its facts is correct. Yet, the *Kelly* Court's reasoning made clear that it would apply the rule to any obligation imposed as part of a criminal sentence. *See Id.* at 53 (holding that "[b]ecause criminal proceedings focus on the State's interest in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings are 'for the benefit of' the State."). Furthermore, even if we disagreed with the breadth of *Kelly's* holding or its rationale, we are not free to blaze our own trail because "this court considers itself bound by Supreme Court dicta almost as by the Court's outright holdings. . . ." *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996). Thus, *Kelly*–dicta

7

and all—applies.

## B. *Restitution Under Utah Criminal Law*

Criminal law is axiomatically public law. When imposed as part of a criminal sentence, restitution ensures that offenders pay their debt, not only to their victims, but also to society. Restitution imposed as part of a criminal sentence under Utah law is not merely "compensation for [a victim's] actual pecuniary loss" under § 523(a)(7); rather, it serves the goals of the state's criminal justice system. The Utah code distinguishes between two types of restitution, complete and court-ordered. Utah Code Ann. § 76-3-201(4)(c) (1999). Complete restitution is a calculation of the amount necessary to compensate a victim for all pecuniary losses. Utah Code Ann. § 76-3-201(4)(c)(i) (1999). Court-ordered restitution—the amount the defendant will be required to pay as part of his criminal sentence—takes into account not only the amount necessary to make a victim whole, but also the financial burden on the defendant, his ability to pay on an installment basis, and "the *rehabilitative effect* on the defendant of the payment of restitution and the method of payment." Utah Code Ann. § 76-3-201(8)(c) (1999) (current version at Utah Code Ann. § 77-38a-302(5)(c) (2004)) (emphasis supplied). "[L]ike the Connecticut statute examined in *Kelly*, this Utah statute . . . 'provides for a flexible remedy tailored to the defendant's situation.'" Aplt's App. at 114 (Memorandum Opinion and Order, filed Aug 15, 2006) (quoting *Kelly*, 479 U.S. at 53). "Because [Utah's] criminal proceedings focus on

8

the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, . . . orders imposed in such proceedings operate 'for the benefit of' the State." *Kelly*, 479 U.S. at 53.

## C. *Mr. Troff's Criminal Sentence*

It is uncontroverted that the court-imposed restitution obligation in this case was part of Mr. Troff's criminal sentence and a condition of his probation. The Utah state court mandated that Mr. Troff comply with seventeen conditions if he was to remain out of prison and on probation, one of which required that Mr. Troff "[p]ay restitution in the amount of $239,969." Aplt's App. at 72 (State of Utah Protected Progress/Violation Report, filed Oct. 6 2001). When the court extended Mr. Troff's probation in October of 2000, it reiterated that Mr. Troff was to "continue paying restitution." Aplt's App. at 87 (Salt Lake County Sentencing Report, dated Oct. 30, 2000).[1] Because the court-imposed restitution obligation was part of Mr. Troff's criminal sentence, Mr. Troff's attempt to discharge the debt is squarely within the cross-hairs of the Supreme Court's decision in *Kelly*.

---

[1] Mr. Troff also maintains that the restitution obligation should be dischargeable because it was converted to a civil judgment after Mr. Troff finished serving his probation. Although this conversion may alter the consequences for Mr. Troff's non-payment, it does not change the fact that the court-imposed restitution was part of his criminal sentence.

9

D. *Decisions in Other Circuits*

Not all courts confronting § 523(a)(7) have looked to legislative history in construing the term "for the benefit of a governmental unit." 11 U.S.C. § 523(a)(7). However, the two cases that Mr. Troff attempts to apply are clearly distinguishable from this case. In order to conclude that Mr. Troff's restitution obligation was dischargeable, the Bankruptcy Court applied *In re Towers*, a Seventh Circuit decision. 162 F.3d 952 (7th Cir. 1998). In *Towers*, an Illinois court found that Mr. Towers had violated the Illinois Consumer Fraud and Deceptive Business Practices Act. *Id.* at 953. The court assessed a civil penalty of $50,000 and ordered Mr. Towers to pay $210,000 in restitution to the individuals he had deceived. *Id.* The Seventh Circuit concluded that the $210,000 of restitution owed to the individuals was dischargeable because the funds were not "payable to and for the benefit of a governmental unit" under the meaning of § 523(a)(7). *Id.* at 955. Judge Easterbrook, writing for the court, emphasized that finding otherwise would "torture[] the language of § 523(a)(7)." *Id.* at 956.

In *In re Rashid*, the Third Circuit held that Mr. Rashid's restitution obligation, imposed as part of a federal criminal sentence before Congress amended the Bankruptcy Code to extend *Kelly* to federal criminal proceedings in 1994, was dischargeable under the plain language of § 523(a)(7). 210 F.3d 201, 208 (3rd Cir. 2000). As in *Towers*, the court held that funds payable to private

10

victims were not "payable to and for the benefit of a governmental unit" under the meaning of § 523(a)(7). *Id.* at 207.

Although the Seventh and Third Circuits confined their reading of § 523(a)(7) to the text's plain meaning, it is important to note that *Towers* and *Rashid* did not require their respective courts to face the federalism concerns that we confront here and that were paramount to the holding in *Kelly* because neither case dealt with a state criminal sentence. In *Towers*, the fine the bankruptcy court discharged was a civil matter not issued as part of a criminal sentence pursuant to the criminal title of the Illinois Code. 162 F.3d at 945. *Rashid* dealt with a federal sentence imposed before Congress amended the bankruptcy code to make such obligations non-dischargeable. 210 F.3d at 204. Because *Rashid* and *Towers* dealt with restitution orders outside the ambit of state criminal sentences, they were free to disregard the legislative history that animated *Kelly* and focus on § 523(a)(7)'s text.

E. *State and Congressional Reliance on* Kelly

Holding that Mr. Troff's restitution obligation is dischargeable would undermine *Kelly* and disrupt two decades of Congressional reliance on the notion that the holding applied whether the crime's victim was the government or a private individual. Congress has extended the rule of *Kelly* to federal criminal restitution orders. *Rashid,* 210 F.3d at 204. In fact, the Supreme Court's failure to expand *Kelly* met with immediate disapproval in Congress. In *Pennsylvania*

11

*Department of Public Welfare v. Davenport*, the Court held that restitution obligations imposed as part of criminal sentences were dischargeable in Chapter 13 proceedings. 495 U.S. 552, 562 (1990). In the same year the decision was handed down, Congress overruled *Davenport* and adopted *Kelly's* interpretation of § 523(a)(7) in enacting the Criminal Victims Protection Act of 1990, Pub. L. No. 101-581, § 3, 104 Stat. 2865 (enacted Nov. 15, 1990) (codified as 11 U.S.C. § 1328(a)(3)) (excepting from discharge any debt "for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime").

Finally, curtailing *Kelly* would upset the well-settled expectations of state legislatures and sentencing courts. Utah's mandatory restitution provisions reflect the legislature's judgment that restitution is an important part of any criminal sentence not only because it forces the criminal to pay for the harm he caused but because of its rehabilitative effects as well. Permitting offenders to discharge their court-imposed obligations merely because they were no longer on probation would subvert Utah's sentencing scheme and allow bankruptcy courts to "hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems." *Kelly*, 479 U.S. at 49 (internal quotation marks omitted). Had the state criminal court wished to have Mr. Troff's payments terminate at the conclusion of his probation, it could have sentenced him accordingly.

12

## V. Conclusion

For the foregoing reasons, we AFFIRM the district court and hold that Mr. Troff's restitution obligation was not dischargeable under § 523(a)(7).

05-4244, *Troff v. State of Utah*

**TYMKOVICH**, J., concurring.

I fully concur in Judge Henry's disposition.  I write separately because this case raises a stark reality I wish to highlight: What happens when the Supreme Court ignores the plain meaning of a statute?

The statute at issue here is not ambiguous or unclear.  It prohibits discharge of debts that (1) arise from a fine, penalty, or forfeiture, (2) are payable to a governmental unit, and (3) are not compensation for actual victim loss.  11 U.S.C. § 523(a)(7).  In this case, Troff's debt fails the second and third elements, and, one would think, that would be the end of the story.

But the Supreme Court in *Kelly v. Robinson*, 479 U.S. 36 (1986), tells us that we should discount the statutory text for policy considerations.  The *Kelly* Court could easily have ruled as a textual matter in favor of the government in that case since (1) the recipient of restitution was a governmental agency, not a private person, and (2) the losses were linked to the state's welfare program, not to specific victims.  Instead of leaving well enough alone, however, the Court departed from ordinary textual analysis and followed the lure of policy maker.  Thus, we get odd language from *Kelly* such as "the text is only the starting point," followed by language endorsing a policy assessment—we need figure out what is "for the benefit of society as a whole."

I agree with the bankruptcy court below that the Supreme Court

overreached in *Kelly*. I probably would also agree with the Supreme Court that the better national policy is for state criminal restitution orders to be non-dischargeable in bankruptcy. But that is not what Congress said in § 523. It is the Court's *interpretation* of the statute that commands that the debtor lose here, not the *language* Congress chose to use in the statute. As tempting as it would be to ignore the Supreme Court's interpretation of the text in favor of the actual text, that is not our role at the circuit court level.

In the end, *Kelly* is a textbook example of the Court ignoring the plain meaning of a statute to further competing policy goals with very good arguments on each side. It is not altogether clear the Court made the best choice. It appears nonetheless that Congress over the years has acquiesced in that interpretation, so perhaps this is a case of "no harm, no foul." Even so, subject to the vagaries of stare decisis, the Supreme Court could and should correct its error by taking this case and narrowing the holding of *Kelly* to the statutory text.